RAYMOND K. ADAMS ET AL. *v.* JAY E. RUBINOW ET AL.

KING, C. J., ALCORN, HOUSE, THIM and RYAN, Js.

Argued June 11—decided November 20, 1968

*John S. Murtha,* with whom were *James P. Sand-ler, John E. Silliman* and, on the brief, *Arthur B. Locke,* for the plaintiffs.

*Raymond J. Cannon,* assistant attorney general, with whom were *Edward J. Peters, Jr.,* assistant attorney general, and, on the brief, *Robert K. Kil-lian,* attorney general, for the defendants.

KING, C. J. The plaintiffs comprise thirty of the judges of probate of Connecticut, each of whom was elected for a four-year term commencing on January 4, 1967. Each of ten Probate Court clerks, as listed in the stipulation of facts, authorized the plaintiff employing him to prosecute this action in

his behalf. The named parties defendant are the Probate Court Administrator, the Chief Court Administrator, the Commissioner of Public Works, the Treasurer of Connecticut, the Commissioner of Finance and Control of Connecticut and the Comptroller of Connecticut.

The plaintiffs claim that No. 558 of the Public Acts of 1967, entitled "An Act Concerning Administration of the Probate Court", and hereinafter referred to as the Act, is in large part unconstitutional, and they seek answers, upon a stipulation of facts, to certain stated questions.

## I

Before answering the specific questions asked, it is desirable, if not essential, to set forth certain general rules applicable in testing claims that a statute is unconstitutional and also to set forth certain fundamental principles as to the respective powers of the legislative and judicial departments of our government which are of controlling force in the determination of claims made by the plaintiffs in their discussion of the specific questions.

Relevant applicable principles of constitutional law will first be considered. Because of the separation of powers, one claiming that a legislative enactment is invalid on the ground that it is unconstitutional must establish its invalidity on that ground beyond a reasonable doubt. *Hardware Mutual Casualty Co.* v. *Premo,* 153 Conn. 465, 470, 217 A.2d 698. A corollary of this rule is that a plaintiff, in challenging the constitutionality of a statute, must sustain the burden of proving that the effect or impact of the challenged statute on him adversely affects a constitutionally protected right which he has. "This means a right which he proves

that he has under the facts of his particular case and not merely under some possible or hypothetical set of facts not proven to exist." *Hardware Mutual Casualty Co.* v. *Premo,* supra, 471, and cases cited. A further corollary is that, where a statute reasonably admits of two constructions, one valid and the other invalid on the ground of unconstitutionality, courts should adopt the construction which will uphold the statute even though that construction may not be the most obvious one. *Carilli* v. *Pension Commission,* 154 Conn. 1, 8, 220 A.2d 439; *Ferguson* v. *Stamford,* 60 Conn. 432, 447, 22 A. 782; *Wilton* v. *Weston,* 48 Conn. 325, 338. Of course, the fact that the plaintiffs chose to request a declaratory judgment, upon a stipulation of facts, in nowise changes or relieves them of the burden of proof resting on them. *Hardware Mutual Casualty Co.* v. *Premo,* supra, 472, 473.

We now turn to certain fundamental principles as to the respective powers of the judicial and legislative departments under the Connecticut constitution as involved in certain basic claims of the plaintiffs. Prior to the adoption of our first constitution in 1818, legislative, executive and judicial powers had been centered in, and exercised by, the General Assembly and its predecessor, the General Court. One of the great achievements, if not the greatest achievement, of the constitution of 1818 was the division of the powers of government into three distinct departments, legislative, executive and judicial, each confided to a separate magistracy. Statutes, 1821, preface, p. vii and p. 149 n.1; *State Bar Assn.* v. *Connecticut Bank & Trust Co.,* 145 Conn. 222, 231, 140 A.2d 863. This separation was accomplished by article 2 of the constitution of 1818 entitled "Of the Distribution of Powers", which read as follows:

"The powers of government shall be divided into three distinct departments, and each of them confided to a separate magistracy—to wit— those which are legislative, to one; those which are executive, to another; and those which are judicial, to another." This provision, unchanged except for insignificant variations in punctuation, was carried into the constitutions of 1955 (article 2) and 1965 (article 2).

In the period from 1818 until the decision in *Norwalk Street Ry. Co.'s Appeal,* 69 Conn. 576, 586, 37 A. 1080, in 1897, and in spite of the decision in *Brown* v. *O'Connell,* 36 Conn. 432, 446, there was a failure to appreciate the full import and application of article 2. See, for instance, *Wheeler's Appeal,* 45 Conn. 306, 315. But in the *Norwalk* case it was finally clearly determined that (1) the constitution represented a grant of power from the people, in whom all power originally resided, and (2) the powers granted to the General Assembly are legislative only and those granted to the judiciary are judicial only. Id., 592. But the legislative powers granted the General Assembly are complete except as restricted by the state or federal constitution, just as the judicial powers granted the judicial department are complete except as restricted by the state or federal constitution. *Patterson* v. *Dempsey,* 152 Conn. 431, 444, 207 A.2d 739. Any doubt as to the authority of the *Norwalk* case was set at rest in 1912 in *Bridgeport Public Library & Reading Room* v. *Burroughs Home,* 85 Conn. 309, 319, 82 A. 582, and its construction of article 2 has been followed consistently up to, and including, the present time, two of the more recent cases being *State Bar Assn.* v. *Connecticut Bank & Trust Co.,* supra, and *Heiberger* v. *Clark,* 148 Conn. 177, 185, 189, 169 A.2d 652.

The plaintiffs make the basic claim that this construction precludes the legislature from making any rules for the administration of, or the practice or procedure in, the probate courts, either directly or through delegation to another person such as the probate court administrator, as is purportedly done in § 8 of the Act.

Indeed, the plaintiffs claim that the General Assembly can make no rule regarding the administration of, or practice or procedure in, any court, unless expressly authorized by the constitution, that no such authority has been conferred, and thus that the legislature has itself no rule-making power and consequently could confer none on a probate court administrator or on anyone else. Although the simplicity of this reasoning is appealing, it must be rejected as an incorrect statement of our law. Unfortunately, perhaps, grave constitutional questions cannot be so easily solved. "The rule of separation of governmental powers cannot always be rigidly applied." *Matter of Rosenthal* v. *McGoldrick,* 280 N.Y. 11, 14, 19 N.E.2d 660; 20 Am. Jur. 2d, 432, Courts, § 65. The rule-making power of the courts is the subject of an annotation in 110 A.L.R. 22, supplemented in 158 A.L.R. 705.

The courts of this state fall into two groups, those established by the constitution itself and those created by the General Assembly under authority granted in the constitution. Section 1 of article 5 of the constitution of 1818, carried over, virtually unchanged, into the constitutions of 1955 and 1965, provided as follows: "The judicial power of the state shall be vested in a supreme court of errors, a superior court, and such inferior courts as the general assembly shall, from time to time, ordain and establish: the powers and jurisdiction of which

courts shall be defined by law."[1] Thus, the Supreme Court and the Superior Court are established by the constitution and may be referred to as constitutional courts, while all other courts, including, of course, the probate courts, are established by the legislature and fall within the designation of "lower courts". An elaborate discussion of the historical development of our judicial system may be found in *Styles* v. *Tyler*, 64 Conn. 432, 442, 30 A. 165.

The effect of the development in the understanding of the true meaning of the constitutional provision for separation of powers, in the intervening years since 1818, as far as rule making is concerned, is that the General Assembly has no power to make rules of administration, practice or procedure which are binding on either of the two constitutional courts and that any attempt on its part to exercise such power is dependent, for its efficacy, upon the acquiescence of the constitutional court involved. *In re Appeal of Dattilo*, 136 Conn. 488, 492, 72 A.2d 50. Manifestation of such acquiescence may, although it need not, take the form of the adoption of the statutory rule as a rule of court in the exercise of the court's inherent rule-making power. *Heiberger* v. *Clark*, supra; *State Bar Assn.* v. *Connecticut Bank & Trust Co.*, supra, 231.

But, in the case of the lower courts, including, of course, the probate courts, which the General Assembly, under § 1 of article 5, is given the constitutional power to create, the General Assembly has the power to make reasonable rules of administration, practice and procedure provided that they do not significantly interfere with the orderly operation of the court while it remains in existence as a

---

[1] In the constitution of 1965 "supreme court of errors" was changed to "supreme court" and the word "inferior" was changed to "lower".

court. The limiting proviso flows from article 2 of the constitution requiring a separation of powers. The rule-making power of the General Assembly with respect to the lower courts can, and preferably should, be delegated to the Supreme Court as it has been, at least as to practice and procedure, under General Statutes § 51-14 and under § 10 of the Act. See discussion of the rule-making power by the late Chief Justice Maltbie on pages xi–xvii of the 1951 edition of the Practice Book.

It is through application of this principle that the 1963 edition of the Practice Book contains, as stated on page iii of the preface, *"as rules of court,* such procedural statutes as appeared desirable, with any necessary changes in phrasing. These new rules are incorporated in this revision with the result that all matters of procedure are, so far as possible, now governed by rules of court appearing in a single volume. Statutes which, though partly procedural, might be construed to relate, at least in part, to matters of substance are not included." (Emphasis added.) This course was possible because the procedural rules for the Supreme Court were adopted by the justices of that court, and the procedural rules for the Superior Court were adopted by the judges of that court. Rules of procedure for the lower courts, such as the Court of Common Pleas, were adopted by the justices of the Supreme Court pursuant to authority granted by the General Assembly under § 51-14 of the General Statutes.

It must not be overlooked that the line between the enactment of a substantive law, which of course does clearly lie within the legislative domain and the enactment of a rule of judicial administration, practice or procedure, cannot always be clearly and sharply drawn. Thus it is that statutes which par-

took of both procedural and substantive law were not in terms adopted by the judges as rules of court.

Another claim of the plaintiffs is that there is no power in the General Assembly to confer nonjudicial powers on a judicial officer and therefore that the attempt in § 8 of the Act to authorize a judge of the Superior Court to supervise and make regulations for the administration, recording and accounting procedures of the courts of probate is, apart from any question of the right of the General Assembly to make such regulations, an unconstitutional attempt to delegate legislative power to a judicial officer.

It is certainly true that the separation of powers provision of the constitution (article 2) precludes the General Assembly from providing for the performance of legislative, administrative or other nonjudicial duties by a judge of any court in the course of, and as incident to, a judicial proceeding. *Norwalk Street Ry. Co.'s Appeal,* 69 Conn. 576, 602, 37 A. 1080; see also *Matter of Richardson,* 247 N.Y. 401, 420, 160 N.E. 655. In the instant case, however, powers conferred upon the probate court administrator, who is a judge of the Superior Court, are entirely apart from, and in nowise incidental to, any judicial proceeding, as such. Thus, this is not a situation involving, as in the *Norwalk* case, an infraction of the separation of powers provision of article 2 by the attempted use of a judicial proceeding to carry out a legislative or administrative function.

Rather, the question is as to the right of the General Assembly to impose such administrative duties on a judge of the Superior Court. Of course, if these duties interfere with the orderly performance by the Superior Court of its judicial functions, the

Act would be unconstitutional as an interference with the inherent powers of that court. Certainly if an attempt were made to impose upon a judge of the Superior Court duties entirely outside the judicial department, such, for instance, as the duties of the motor vehicle commissioner or of the highway commissioner, the attempt would fall as an unconstitutional interference with the proper performance by the Superior Court of its judicial functions. Here, however, the probate court administrator is devoting no portion of his time to duties outside the judicial department, since the Probate Court, under article 5, § 1, of the constitution, is a lower court and, as such, is a part of the judicial department. Moreover, an analysis of his duties shows them to be clearly administrative and limited in their scope.

In § 8 of the Act, the probate court administrator is authorized to "issue rules and regulations, binding on all courts of probate, concerning the auditing, accounting, statistical, billing, recording, filing and other procedures for the courts of probate".

In § 9, the probate court administrator is authorized to make recommendations to the General Assembly as to statutory changes which would improve the administration of the courts of probate.

In § 10, the probate court administrator is authorized to recommend to the judges of the Supreme Court, for adoption and promulgation, under General Statutes § 51-14, uniform rules for practice and procedure in the probate courts.

While the plaintiffs make much of the phrase "and other procedures" in § 8, and of the first sentence in § 9 empowering the probate court administrator to "attend to any and all matters which he deems necessary for the efficient operation of courts of probate and for the expeditious dispatch and proper

conduct of the business of said courts", we think it obvious that the "rules and regulations" which the probate court administrator is authorized to make, as well as his other powers and duties, as set forth in § 9, are basically concerned with efficient administrative, accounting and record-keeping procedures to be followed in the Probate Court, and that the Act, including §§ 7, 8, 9 and 10, considered as a whole, and in the light of the ejusdem generis rule, authorizes rules only as to efficient administrative, accounting and record-keeping procedures of the general types specifically enumerated in the Act.[2] *State* v. *Certain Contraceptive Materials,* 126 Conn. 428, 430, 11 A.2d 863.

The rule that the judiciary may not be charged with administrative functions does not apply in its full vigor when such functions are " 'reasonably incidental to the performance of judicial duties.' . . . Supervision of the courts, appointment of court officers and employees, and determination of their compensation, are, it is plain, administrative functions 'incidental to the performance of judicial duties' and may be intrusted to judicial officers. That has never been doubted and statutes conferring such power have never been challenged." *Matter of Rosenthal* v. *McGoldrick,* 280 N.Y. 11, 14, 19 N.E.2d 660.

If we keep in mind the limited nature of the administrative duties imposed and the fact that they are entirely confined within the judicial department, the plaintiffs have failed to establish that in imposing them the Act is unconstitutional per se. But it must not be overlooked that, if the Superior Court finds itself significantly interfered with in the

[2] The authority to fix Probate Court fees, conferred by § 19 of the Act, is hereinafter separately discussed.

orderly conduct of its judicial functions, it has the inherent power to refuse to acquiesce in this imposition on a judge of its court, and in that event, of course, the attempted delegation would fall as an unconstitutional interference with the proper performance, by the Superior Court, of its judicial functions.[3]

Thus far, however, the Superior Court has acquiesced in the performance by the probate court administrator of his duties under the Act, as it has in the operation of certain procedural statutes, and in the light of this acquiescence, the plaintiffs have failed to prove the unconstitutionality of the Act on the ground now under consideration.

Closely allied to, but nevertheless entirely distinct from, the power of the General Assembly to impose the duties of probate court administrator on a judge of the Superior Court is its power to appoint, or to authorize the appointment of, a probate court administrator or any other officer in the Probate Court or, for that matter, in any other court. The plaintiffs, in the third and fourth issues discussed in their brief, seem to claim that the General Assembly has no power to appoint, directly or indirectly, any personnel in any court.

The Act, as we have construed it (with the exception of the limited power to fix probate fees hereinafter discussed), confers on the probate court administrator only administrative powers and these only in connection with a lower court as distinguished from a constitutional court.

The legislative power to make reasonable rules for the lower courts, including the probate courts,

---

[3] The number of judges of the Superior Court was substantially increased by § 16 of No. 331 of the Public Acts of 1965 and § 2 of No. 243 of the Public Acts of 1967.

includes not only rules of practice and procedure, as such, but also rules providing for the efficient administration of those courts, including sound accounting procedures.

The power to appoint an administrator of the probate courts is not within the inherent power of any court other than perhaps the probate courts themselves. Thus, in order to have the office of probate court administrator created, or its duties prescribed, or an appointment to the office made, at least by any authority other than the probate courts themselves, legislative authority was needed. Because of the limited, and purely administrative, nature of the duties of the office, we cannot hold that the plaintiffs have sustained their burden of proving that the action of the General Assembly in creating the office, and in providing that the appointment to it should be made by the chief court administrator, in and of itself and under the particular facts, was a fatal infringement of the constitutional mandate of the separation of powers.

Although the Act would have been improved, and its constitutionality would have been more obvious, had it provided for the appointment of a probate court administrator by the justices of the Supreme Court, or even by the judges of the Superior Court, instead of by the chief court administrator, it would be illogical to hold that the separation of powers provision permits the creation by the General Assembly of the position of probate court administrator, as we think it does, and at the same time denies it authority to appoint him either directly or, as is attempted here, indirectly through the chief court administrator.

Since there is no inherent power in the Supreme Court or in the Superior Court to provide for the

administration of the lower courts including the probate courts, to uphold this claim of the plaintiffs would be to deny any power of overall supervision or administration of the lower courts, either by the General Assembly or by the constitutional courts. We cannot find that the plaintiffs have established unconstitutionality, as claimed under the third and fourth issues in their brief, on the ground that the General Assembly is without power itself, directly or indirectly, to appoint anyone to perform the functions purportedly conferred on the probate court administrator.[4]

Indeed, this is but a facet of the plaintiffs' basic claim, which we reject, that, absent a constitutional amendment, there is no power in either the General Assembly, or elsewhere, to provide for any overall administration of the lower courts. As we understand the plaintiffs' claims, the appointment of a probate court administrator, if permissible at all, could be made only by the probate courts themselves,

---

[4] It perhaps should be pointed out that personnel in the judicial department, other than the judges themselves whose mode of appointment is established in the constitution, have from time immemorial been appointed by the judges of the respective courts. As to constitutional courts, there is no question that, as stated in *Norwalk Street Ry. Co.'s Appeal*, 69 Conn. 576, 596, 37 A. 1080, "[u]nder our State Constitution appointments, other than those whose mode is prescribed [in the constitution], are governed by the division of governmental powers". Thus, the appointment of the personnel in a constitutional court, including, but not limited to, state's attorneys, public defenders, clerks of court, and messengers, is not within the power of the General Assembly. Whether the same rule would apply to the appointment of such personnel in the lower courts need not now be finally determined because the probate court administrator is given only administrative, rather than appointive, powers, and those powers relate solely to the probate courts as a whole, and each court is in effect an independent judicial entity. Legislative action was necessary if these independent judicial entities were to be welded into an integral component of an efficient judicial system.

pursuant to their inherent powers of self-regulation. This claim we cannot accept.

One of the claims of unconstitutionality most strongly pressed by the plaintiffs relates to §§ 15 and 16 of the Act, which purport to authorize the chief court administrator, upon complaint of the probate court administrator that a judge of probate has "violated any law or rule or canon of judicial ethics", if, after notice and hearing, the chief court administrator finds such violation, to "reprimand such judge or suspend his powers for the remainder of his term or for such lesser period as he [the chief court administrator] deems appropriate". We see no difference in principle between the suspension of the powers of a judge of probate under the Act and his outright suspension from office.

Although courts of probate existed long prior to the constitution of 1818, they were not mentioned in that constitution and thus were not constitutional courts. Thereafter, they remained legislative courts, that is, they were continued by the General Assembly under the general authority to establish "inferior courts" granted in § 1 of article 5 of the constitution of 1818. Under the provisions of § 3 of that article, the judges of all inferior courts, including, of course, judges of probate, were appointed annually by the General Assembly. Judges of probate were first mentioned, as such, in the ninth amendment to our constitution, adopted in 1850, which provided for their election by the voters of the particular probate district. In the twenty-first amendment, adopted in 1876, their terms of office were established at two years, and by the forty-fourth amendment, adopted in 1948, their terms of office were extended to four years. Conn. Const., 1965, art. 5 § 4.

It is clear that the General Assembly is power-less to change this four-year term of office fixed by the constitution. *State ex rel. Eberle* v. *Clark,* 87 Conn. 537, 542, 89 A. 172. The constitution contains no specific provision with respect to the removal from office of judges of lower courts. Such a provision was hardly needed while the term of office was annual, but the present four-year term markedly changes the situation. The plaintiffs' claim amounts to one that, regardless of their conduct, whether criminal or otherwise and even if convicted of felonious misconduct in office, they cannot be removed from office except by impeachment proceedings, which are provided for in article ninth of the constitutions of 1818 and 1965. Section 3 of article ninth of the constitution of 1965 provides that "[t]he governor, and all other executive and judicial officers, shall be liable to impeachment". This of course includes a judge of probate since he is clearly a judicial officer. The plaintiffs claim not only that there is no right of removal except by impeachment but also that there is no difference in essence, and at most a difference in degree, between suspension and removal and that the constitutional barrier to removal applies equally to suspension. From this argument, they claim that the powers of suspension purportedly conferred on the probate court administrator, and especially on the chief court administrator, under §§ 15 and 16 of the Act are invalid as unconstitutional.

It is clear that there is a difference between suspension and removal. *McKeithen* v. *Stamford,* 149 Conn. 619, 624, 183 A.2d 280; note, 118 A.L.R. 170, 171. And there is also a difference between a temporary suspension, for the protection of the public, pending the outcome of a criminal prosecution or an

impeachment proceeding and a suspension meted out as a punishment upon a charge duly preferred after notice and hearing. *McKeithen* v. *Stamford,* supra; note, 118 A.L.R. 170, 171. Since the Act purports to authorize the suspension of a judge of probate who is found to have violated "any law or rule or canon of judicial ethics", punishment of the judge and the enforcement of the Act, rather than the temporary protection of the public, appear to be the primary purposes of the suspension provision. What amounted to a temporary suspension of a United States district judge, at least so far as his exercise of his judicial powers was concerned, pending a hearing before the judicial council of the tenth circuit, was permitted, as an interlocutory action, even without passing on "the propriety of the interlocutory action taken" in *Chandler* v. *Judicial Council,* 382 U.S. 1003, 1004, 86 S. Ct. 610, 15 L. Ed. 2d 494. In that case, the council had found that the judge " 'is presently unable, or unwilling, to discharge efficiently the duties of his office' ". Ibid. But since the Connecticut constitution, as already pointed out, has provided a four-year term of office and has also provided for removal by impeachment (article 9 § 3) and contains no other provision for removal, it is clear that the legislature cannot provide for a suspension which in effect may actually amount to a removal. See *McKeithen* v. *Stamford,* supra, 625; *State ex rel. Hosford* v. *Kennedy,* 69 Conn. 220, 226, 37 A. 503; 30A Am. Jur. 17, Judges, § 26. It is the constitutional provision for a four-year term which raises the principal problem on this branch of the case. *Lowe* v. *Commonwealth,* 60 Ky. 237, 243. Where the term of office is prescribed by the legislative body, unfettered by constitutional provisions, a different situation obtains. See, for

instance, cases such as *McAllister* v. *United States,* 141 U.S. 174, 180, 11 S. Ct. 949, 35 L. Ed. 693; *Levitt* v. *Attorney-General,* 111 Conn. 634, 648, 151 A. 171.

A further difficulty in § 16 flows from the provision which requires the judge of probate, in effect, to pay the per diem compensation and expenses of a substitute judge during a period of suspension. In the event of a wrongful suspension, a public officer, in a proper proceeding, is entitled to recover any salary accruing during the period he is unlawfully removed from his office. *Holley* v. *McDonald,* 154 Conn. 228, 234, 224 A.2d 727; *McKeithen* v. *Stamford,* supra, 621. Here, no method is in terms provided for the recovery of the compensation of the substitute judge in the event that the suspension is found wrongful, nor is any appeal provided, in terms at least, from the order of suspension. Judges of probate receive no salary, and their compensation is derived from fees. Whether such a method of compensation should, in the case of a wrongful suspension, be considered as on the same basis as a stated salary is a question which it is unnecessary presently to determine.

## II

We turn now to the questions which are propounded in the complaint and in the stipulation. They fail to conform to Practice Book § 310 (b) requiring that "[t]he prayer for relief shall state with precision the declaratory judgment desired". *Holt* v. *Wissinger,* 145 Conn. 106, 109, 139 A.2d 353. Actually, the prayer for relief seeks answers to eleven questions, some of which are extremely broad, whereas the stipulation seeks answers to eight questions, some of which differ from those in the complaint. The plaintiffs' briefs seem to discuss six

main issues although the discussion of some of these involves multiple clauses in multiple subdivisions. As already implied, a number of the plaintiffs' questions are not susceptible of the categorical and dogmatic answers which the plaintiffs seem to envision. Indeed, we would probably be justified in refusing to entertain this reservation at all.

On the other hand, the Act was a well-motivated attempt on the part of the General Assembly to weld the several independent courts of probate into an efficiently administered court with uniform recording and accounting procedures. And obviously, the plaintiffs, in adopting the instant reservation procedure, were attempting to facilitate the work of this court in passing upon the constitutionality of various provisions of the Act. Under these circumstances, and in view of the great importance of, and far reaching public interest in, the present case, we have decided to attempt to comply, as far as is reasonably possible, with the obvious desires of the parties and to overlook technical procedural deficiencies insofar as it can safely and properly be done. We follow, as controlling, the six issues discussed in the plaintiffs' briefs since in any case we restrict our consideration to questions clearly raised and pursued in the briefs. *Kobryn* v. *Kobryn,* 156 Conn. 638, 244 A.2d 471; *State* v. *Benson,* 153 Conn. 209, 217, 214 A.2d 903.

(1)

The first question involves the standing of the plaintiffs to make an attack on the constitutionality of §§ 15 and 16 of the Act, which purport to authorize the suspension of a judge of probate as previously discussed. The defendants claim the plaintiffs have no standing to make such an attack since

no one of them has been suspended or been threatened with suspension. We think they clearly have standing since the Act purports to authorize their suspension under stated conditions. *Lyman* v. *Adorno,* 133 Conn. 511, 529, 52 A.2d 702. This is not a situation where an administrative ruling, although not directly authorized by a statute, could be made in such fashion as to have an unconstitutional impact on a plaintiff. In such a situation, he has no standing to attack the statute as unconstitutional until such a ruling has been made. *Hardware Mutual Casualty Co.* v. *Premo,* 153 Conn. 465, 471, 217 A.2d 698. Here, the statute directly authorizes a suspension and, as hereinafter pointed out, we can conceive of no way in which the suspension, if made under the terms of the Act, could be upheld as constitutional.

### (2)

The second issue involves the constitutionality of the powers of suspension purportedly given the chief court administrator under §§ 15 and 16 of the Act.

The authority to suspend, although only after notice and hearing, is conferred upon the chief court administrator if he finds that the judge has become "unable to discharge his duties" or has violated "any law or rule or canon of judicial ethics". The suspension may be "for the remainder of his term or for such lesser period as . . . [the chief court administrator] deems appropriate". It is also provided in § 16 that upon suspension the probate court administrator shall cite in another judge and fix his per diem compensation, which, with his expenses, shall be paid by the court of probate in which the suspension occurred.

The plaintiffs have established that the Act in effect purports to delegate the power to shorten the term of office as fixed by the constitution since the power to suspend, in the manner here provided, amounts to that. The power of impeachment permits removal, but the General Assembly has no other power to alter the term as fixed in the constitution. See *State ex rel. Eberle* v. *Clark,* supra; *State ex rel. Hosford* v. *Kennedy,* 69 Conn. 220, 226, 37 A. 503.

It is important to bear in mind that the question before us is very different from one involving the power of the Superior Court for the necessary protection of the public, in a proper proceeding, to impose a temporary restraint on the exercise of judicial powers by a probate judge because of criminal misconduct, or during any period of mental or physical incapacity or for other good cause. See *Chandler* v. *Judicial Council,* 382 U.S. 1003, 86 S. Ct. 610, 15 L. Ed. 2d 494; *McKeithen* v. *Stamford,* 149 Conn. 610, 625, 183 A.2d 280; *Sage-Allen Co.* v. *Wheeler,* 119 Conn. 667, 679, 179 A. 195; note, 118 A.L.R. 170, 171.

No such power of suspension as purportedly provided in this Act has been attempted as a means of enforcing administrative rules or regulations, whether statutory or otherwise, in any other Connecticut court, whether constitutional or legislative. Thus, it would not appear that this was such a necessary portion of the Act that its deletion, as unconstitutional, to the extent hereinbefore determined, would render the entire Act unconstitutional, even in the absence of a severability provision, under General Statutes § 1-3 and cases such as *State* v. *Wheeler,* 25 Conn. 290, 299, *Amsel* v. *Brooks,* 141 Conn. 288, 300, 106 A.2d 152, *Mott's Super Markets,*

*Inc.* v. *Frassinelli,* 148 Conn. 481, 492, 172 A.2d 381, and *State ex rel. Bennett* v. *Glynn,* 154 Conn. 237, 242, 224 A.2d 711.

The plaintiffs' claim that the investigatory powers conferred on the probate court administrator in § 8 fall with the invalidity of the suspension procedure authorized in §§ 15 and 16 requires no extensive discussion. Clearly, such investigatory powers are needed in connection with the other portions of the Act.

Nor do we find merit in the plaintiffs' claim that in cases of disqualification, disability or vacancy, the probate court administrator cannot be given power to call in another judge of probate as provided in § 15 of the Act.

(3)

The third claim of the plaintiffs is that the General Assembly has no power to make rules for the administration of, or practice or procedure in, the probate courts and that this precludes the delegation of such power to the probate court administrator or anyone else since the legislative department cannot delegate that which it does not possess.

As already pointed out, the decisions of this court are to the contrary with respect to the "lower courts" created by the General Assembly pursuant to § 1 of article 5. It is true that the division of powers provided in article 2 precludes the General Assembly from enacting any legislation which significantly interferes with the proper performance by a lower court of its judicial functions, as these are established by the General Assembly under § 1 of article 5. But with that exception, the General Assembly has the power to make reasonable rules for the administration of, and practice and pro-

cedure in, the lower courts, and, to the extent of any inconsistency, these override any similar rules which the lower court itself may have adopted under its inherent rule-making power. The General Assembly may delegate, as to a great extent it has delegated, its rule-making power for the lower courts to the Supreme Court under General Statutes § 51-14 and under § 10 of the Act.

As already pointed out, the rule-making power conferred on the probate court administrator by the Act obviously is limited to rules as to efficient administrative procedures including accounting and record keeping. As to these matters, and we may not assume that the probate court administrator will attempt anything more, we think the plaintiffs have failed to show that the General Assembly has either delegated powers which it did not possess or has failed to establish sufficient guidelines or primary standards under the rule of cases such as *State* v. *Stoddard,* 126 Conn. 623, 628, 13 A.2d 586. · Under § 10, rules of practice and procedure in the ordinary sense of the words are established by the Supreme Court under General Statutes § 51-14, and the probate court administrator has only the power which any citizen has to suggest proposed rules and regulations to the Supreme Court for adoption or rejection by it.

It is hardly necessary to point out that the Act cannot be held invalid on the mere possibility that the probate court administrator will arrogate to himself powers not conferred on him by the Act, as we have construed it, and thereby go beyond the primary standards set forth in the Act and especially in §§ 2 and 8 thereof. *Hardware Mutual Casualty Co.* v. *Premo,* 153 Conn. 465, 480, 217 A.2d 698. The efficient administration of the probate

courts, including the accounting and record-keeping procedures to be established for them, covers a rather narrow field but one comprising a large number of details, and it cannot be expected that primary standards can attain the specificity possible in some other administrative areas. See *Forest Construction Co.* v. *Planning & Zoning Commission,* 155 Conn. 669, 679, 236 A.2d 917; *Rosenthal* v. *State Bar Examining Committee,* 116 Conn. 409, 416, 165 A. 211.

The Act would have been improved in draftmanship had the primary standards for the exercise of the probate court administrator's delegated powers been set forth in one place. In § 2, however, the probate court administrator is made "responsible for the efficient operation of the courts of probate", and in § 8, as has been pointed out, he is given power to issue rules and regulations "concerning the auditing, accounting, statistical, billing, recording, filing and other procedures for the courts of probate". We think the plaintiffs have failed to show that these are not adequate primary standards for the limited administrative powers which are conferred upon the probate court administrator under the portions of the Act now under consideration. Thus, we cannot find that the plaintiffs have established unconstitutionality as set forth in their third claim as hereinbefore stated.

As has been already pointed out, the infirmity in the delegation of the administrative powers to a judge of the Superior Court lies in its potential interference with the proper functioning of that court. It is for that court to determine whether there has been such interference, and the acquiescence by that court in the performance, by the probate court administrator, of the duties imposed upon him

amounts to an acquiescence in the delegation of those powers. Unless and until that acquiescence is withdrawn, the plaintiffs have failed to sustain their claim of unconstitutionality on this ground. Whether the plaintiffs have any standing to raise this particular claim of unconstitutionality, in view of the fact that any adverse impact would fall on the Superior Court, rather than on themselves, is a matter which we need not, and do not, pass upon. See *Levitt* v. *Attorney-General,* 111 Conn. 634, 646, 151 A. 171.

### (4)

The fourth issue, with the exception of an attack on § 19 and on § 23 of the Act, has been sufficiently discussed, especially in connection with the discussion of the third issue.

### (a)

Section 19 provides that the costs charged by courts of probate shall be uniform throughout the state, establishes certain maximum total charges which can be made for the settlement of an estate, and authorizes the probate court administrator to set the permissible charges for the various proceedings (subject to any applicable maximum totals established by the Act) insofar as they are not otherwise fixed by the General Assembly itself.

The General Assembly has, by statute, fixed probate fees, as it has the salaries of the judges and the fees of other courts, since long before the constitution of 1818. See Conn. Acts and Laws, 1796, pp. 177, 178; Statutes of Connecticut (Rev. of 1821), tit. 83, p. 388 §§ 1–5; Statutes of Connecticut (Rev. of 1849), tit. 46, p. 563 § 2, p. 569 § 18; General Statutes (Rev. of 1958) § 45-17.

Section 19 purports to transfer the power to fix court fees or costs, subject to the foregoing basic limitations, from the General Assembly to the probate court administrator.

The fixing of court fees is clearly a legislative, rather than a judicial or even an administrative, function. The judges of the Supreme and Superior Courts have always recognized the exclusive prerogative of the General Assembly in this field and have, in the exercise of their inherent rule-making power, carefully refrained from attempting to fix court fees. The mere fact that the fees or costs involved are to be charged by a lower (probate) court cannot transform a legislative function into a judicial one.

It has been already pointed out that the separation of powers provision of our constitution forbids the imposition upon a judge of the Superior Court of clearly nonjudicial powers or duties. Yet, § 19 of the Act purports to do this very thing. We think that this clearly constitutes an unconstitutional attempt by the General Assembly (however well motivated) to impose legislative powers and duties on the probate court administrator.

Although the plaintiffs have based their attack on the constitutionality of this section on certain additional grounds, it is unnecessary to consider or discuss these other grounds since, for the foregoing basic reason, § 19 of the Act cannot be sustained.

It is clear, however, that the Act as a whole can stand and be an effective piece of legislation even though the provision purporting to authorize the fixing of probate fees and costs by the probate court administrator is eliminated as unconstitutional. This is so even though there is no severability provision in the Act. General Statutes § 1-3; *State ex rel.*

*Bennett* v. *Glynn,* 154 Conn. 237, 242, 224 A.2d 711; *Mott's Super Markets, Inc.* v. *Frassinelli,* 148 Conn. 481, 492, 172 A.2d 381; *Amsel* v. *Brooks,* 141 Conn. 288, 300, 106 A.2d 152; *State* v. *Wheeler,* 25 Conn. 290, 299.

(b)

Section 23 of the Act provides for the payment of specific assessments by each probate judge and that "[a]ny judge of probate who fails to make any payments required hereunder within thirty days of the date such payment is due shall be ineligible for renomination or election". Section 4 of article 6 of the constitution of 1818 provided that "[e]very elector shall be eligible to any office in this state, except in cases provided for in this constitution". This provision was carried over, substantially unchanged, as § 3 of article 6 of the constitution of 1955 and as § 10 of article 6 of the constitution of 1965.

The payments referred to in § 23 are payments which are required to be made under the Act toward the pension fund, payment of the expenses of the probate court administrator, and the like.

The ambiguity in the constitutional provision revolves around the meaning of the word "in". In one sense, "any office in this state" would include any public office, including every town, borough, city or state office. The provision came up for construction, however, in *Hackett* v. *New Haven,* 103 Conn. 157, 168, 130 A. 121, and in *Spencer ex rel. Deuse* v. *Fargo,* 114 Conn. 527, 528, 159 A. 349. In each case, it was held that "in" the state meant "of" the state so that the provision referred only to offices of the state government and had no reference to any other public office such as a town or other municipal office.

The holding in *Mills* v. *Gaynor,* 136 Conn. 632, 639, 73 A.2d 823, was to the same effect. The application of the constitutional provision was further limited in the *Hackett* case, supra, to constitutional offices of the state government.

As has already been pointed out, the probate courts are not constitutional courts but "inferior" or "lower" courts established by the General Assembly under the authority of § 1 of article 5 of the constitution. The 1965 constitution does, however, provide in § 4 of article 5 that judges of probate shall be elected by the electors in their respective districts and for a four-year term of office. The fact that they are elected from a geographical district does not prevent their office from being a state office. Members of the house and senate are so elected, and they were recognized in the *Hackett* case as within the scope of § 10 of article 6. Although a judge of probate holds a public office of the state government, he does not hold an office established by the constitution even though his term of office and those who can vote for him are set forth in the constitution. It follows that the office of judge of probate is not a constitutional office within the meaning of § 10 of article 6 as construed in the *Hackett* case.[5]

Thus, the plaintiffs' claim that § 23 of the Act is an infraction of § 10 of article 6 is without merit, and this is true even if § 23 does add a new and additional eligibility requirement to the office of judge of probate. Actually, the provision has

---

[5] The use of the term "officer" instead of "office" in *Hackett* v. *New Haven,* 103 Conn. 157, 169, 130 A. 121, was obviously an inadvertence. In any event, the constitutional provision refers to a constitutional office, and the office of judge of probate is not such an office.

existed for a number of years and was carried into the Act from § 45-29 of the General Statutes, although we do not heavily rely on this fact in reaching our adverse determination of the plaintiffs' claim of unconstitutionality.

(5)

In the fifth issue it is claimed that the Act is unconstitutional in that it fails to establish ascertainable primary standards for the exercise of his powers by the chief court administrator and by the probate court administrator. Since the provisions of §§ 15 and 16 for suspension, by the chief court administrator, as well as the provisions of § 19 purporting to confer fee-fixing powers on the probate court administrator, have been held unconstitutional, there is no need to consider the adequacy of the primary standards established for action under these provisions. It is unnecessary to repeat our discussion of the requirements for primary standards as to other provisions of the Act, and we think it sufficient to state that they have not been shown constitutionally inadequate in the respects claimed. The claim of inadequacy of primary standards in §§ 35 and 42 of the Act, which relate to the duties of the retirement commission, is without merit and does not require discussion.

(6)

The sixth issue involves the validity of § 28 of the Act on the ground that it grants and establishes an unconstitutional public emolument. In essence, the Act establishes a fund, which, augmented by contributions from the beneficiaries, provides for the payment, inter alia, of retirement pensions to probate judges and their employees. Section 28 pro-

vides that "[j]udges of probate courts in office on December 31, 1966, who have held office for at least twelve years" shall be eligible to receive retirement benefits upon attaining the age of sixty-five. The stipulation lists ten former judges of probate who had been in office on December 31, 1966, for at least twelve years but who, unlike the plaintiffs, did not take office for a new term of four years on January 4, 1967. These ten would be eligible, under § 28 of the Act, to receive retirement benefits in the same way as the plaintiffs. Since, under § 56 of the Act, the retirement provisions became effective on January 1, 1968, the effect is to grant the ten former judges a retirement benefit commencing after their retirement. The plaintiffs claim that this violated § 1 of article 1 and § 2 of article 11 of the Connecticut constitution and the equal protection clause of the fourteenth amendment to the constitution of the United States, and in support of their position they cite cases such as *Franco* v. *New Haven,* 133 Conn. 544, 548, 52 A.2d 866, *Warner* v. *Gabb,* 139 Conn. 310, 313, 93 A.2d 487, and *Wadhams* v. *Torrington,* 152 Conn. 454, 457, 208 A.2d 549. See note, 142 A.L.R. 938.

The stipulation indicates that a letter was written to each of the ten former judges involved, enclosing a copy of an earlier version of the complaint in this action, and that a return receipt or other communication was received from each of them indicating actual receipt of the notice.

If the plaintiffs were to succeed in their claim of unconstitutionality, the ten former judges of probate involved would receive no pension. Thus, the ten judges in question would obviously be directly and adversely affected by the relief claimed and should have been made parties unless the court

itself, under the procedure outlined in *National Transportation Co.* v. *Toquet,* 123 Conn. 468, 484, 196 A. 344, found (which we think would be extremely unlikely) that it was not feasible that they all be made parties and itself made an order of notice. It was never contemplated that an action such as this should be instituted as to persons who would be directly and adversely affected by the relief claimed by mere letter writing, even though the letters were received. *Benz* v. *Walker,* 154 Conn. 74, 76, 221 A.2d 841. Our declaratory judgment procedure was not intended to, nor could it, set aside the ordinary constitutional requirements of due process of law. The situation in the present case is especially aggravated because all of the former judges of probate whom the plaintiffs seek to deprive of their pension rights might be, and many of them actually are, laymen who might fail to appreciate the significance of the attack on their pension rights under the Act which the plaintiffs are making.

In any event, both on the ground of ordinary fairness, and on the technical grounds hereinbefore referred to, we will not pass on this issue on the present state of the process.

### III

The Superior Court is advised as follows: We have been restricted, of course, to the facts set forth in the stipulation, and on these facts we cannot find that the plaintiffs have sustained their burden of proving unconstitutionality except (1) as to that portion of §§ 15 and 16 of the Act purporting to provide for the suspension of a judge of probate by the chief court administrator and (2) as to the provisions of § 19 of the Act purporting to authorize the probate court administrator to fix probate fees.

Because of the discrepancies in the number and numbering of the questions asked and the breadth of some of them, as hereinbefore pointed out, we cannot answer them with any greater precision.

No costs will be taxed in this court in favor of any party.

In this opinion the other judges concurred.