[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
I. INRODUCTION.
This declaratory judgment action, tried to the court, involves the construction of an insurance policy ("policy"), including a Form MCS-90 endorsement required by federal regulatory law. The declaratory judgment CT Page 15263 action has been brought against the backdrop of a pending wrongful death action. In a case fiercely fought at every turn, the parties not only disagree on the answers to some vexing legal questions but disagree on the questions themselves. Exercising its discretion, the court will answer some, but not all, of the questions posed by the parties.
II. THE POLICY.
On February 27, 1996, Barbara Haniewski, one of the defendants in this case, applied for a commercial motor vehicle insurance liability policy with the plaintiff, Canal Insurance Co. ("Canal"). The application, which is in evidence, shows that Haniewski did business under the name "Salguod Warehouse Transport." ("Salguod" is "Douglas" spelled backward.) The application further shows that Haniewski's business was a "trucking business" hauling "steel lumber" on two tractors. The "radius max. miles" of each tractor is listed as "u," which is short for "unlimited." The application requests both "trailer interchange coverage" and "intermodal liability coverage." A space on the application entitled "liability information for filings" is left blank.
Canal subsequently issued the "basic automobile liability policy" at issue in this case. The "named insured" is "Barbara Haniewski dba Salguad Warehouse Transport." (The policy's alteration of"Salguod" into "Salguad" is not claimed as significant by any party.) The business of the "named insured" is stated to be "trucking — steel lumber" with "unlimited" radius. The policy contains a "uniform intermodal interchange" endorsement.
The policy period is stated to be from "2/27/96" to "2/27/97." Condition 10 of the policy addresses "Cancellation." That condition provides, in relevant part, that:
 This policy may be cancelled by the named insured by surrender thereof to the company or any of its authorized agents or by mailing to the company written notice stating when thereafter the cancellation shall be effective. This policy may be cancelled by the company by mailing to the named insured at the address shown in this policy, written notice stating when not less than ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the policy period.
CT Page 15264
The policy in its original form did not contain an MCS-90 endorsement. An MCS-90 is an endorsement for policies of insurance covering motor carriers required by federal regulatory law. 49 C.F.R. § 387.15
(2000). Such endorsements "shall specify that coverage thereunder will remain in effect continuously until terminated." Id.
On March 26, 1996, an insurance agent representing Haniewski faxed a written memo to Canal's representative concerning the policy. The memo states, "Please issue a MCS-90 filing for the above ASAP. Their [sic] DOT number is 0634531." On March 28, 1996, Canal issued an MCS-90 in the form of an endorsement to the policy.
The language of the MCS-90 is required by 49 C.F.R. § 387.15. The endorsement states, in relevant part' that:
 The insurance policy to which this endorsement is attached provides automobile liability insurance and is amended to insure compliance by the insured, within the limits stated herein, as a motor carrier of property, with Sections 29 and 30 of the Motor Carrier Act of 1980 and the rules and regulations of the Federal Highway Administration (FHWA) and the Interstate Commerce Commission (ICC).
 In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Cater Act of 1980 regardless of whether or not each motor cater is specifically described in the policy and whether or not such negligence occurs on any route or territory authorized to be served by the insured or elsewhere
 It is further understood and agreed that, upon failure of the company to pay any final judgment recovered against the insured as provided herein, the judgment creditor may maintain an action in any court of competent jurisdiction against the company to compel such payment. . . .
 Cancellation of this endorsement may be effected by CT Page 15265 the company or the insured by giving (1) thirty five (35) days notice in writing to the other party (said 35 days to commence from the date the notice is mailed, proof of mailing shall be sufficient proof of notice), and (2) if the insured is subject to the ICC's jurisdiction, by providing thirty (30) days notice to the ICC (said 30 days notice to commence from the date notice is received by the ICC at its office in Washington, D.C.
On June 19, 1996, Canal issued an endorsement to the policy covering an entity known as Eagle Leasing ("Eagle"). Eagle is also a defendant in this case.
On August 8, 1996, Canal sent Haniewski a Notice of Cancellation. The "reason for cancellation" is stated to be "insured's request — nonpayment." The Notice states that, "Cancellation will take effect at: 9/12/96 12:01 A.M."
No notice of cancellation was sent to the ICC or any successor agency.
III. THE ACCIDENT.
On September 12, 1996 at 6:31 P.M. — eighteen hours and thirty minutes after the ostensible cancellation of the policy — Carlos Reummele, Jr., a truck driver in Haniewski's employ, was involved in a fatal motor vehicle accident in Waterford. Reummele's truck collided with a passenger vehicle. Jing X He, a woman in the passenger vehicle, was killed.
IV. THE UNDERLYING ACTION.
On July 1, 1997, Michael Barbarula, the executor of the estate of Jing X He, commenced a wrongful death action against Haniewski and Ruemmele by service of process. Barbarula v. Haniewski, No. CV 97 0437585. (J.D.N.H.). That action remains pending.
V. THIS CASE.
This case was commenced by service of process on September 15, 1998. Canal is the sole plaintiff. The writ names Haniewski, Eagle, and Reummele as defendants. The complaint consists of three counts, one addressing each named defendant. The complaint seeks a declaration that:
 (1) The claims arising out of the Barbarula v. Haniewski, et al action against Ms. Haniewski d/b/a CT Page 15266 Salguad Warehouse and Transport, Eagle Leasing and Carlos Reummele are not covered by the Policy, as said Policy was no longer in effect at the time of the subject accident;
 (2) That said defendants are not entitled to any benefits from the Policy for claims arising out of said civil action, including indemnification for any award received by the plaintiff therein;
 (3) That the plaintiff has no obligation to provide said defendants with a legal defense in connection with said civil action; and
 (4) That the plaintiff is entitled to reimbursement of costs and attorney's fees spent in connection with this matter to date.
On October 16, 1998, Barbarula filed a motion to be added as a party defendant in this action. That motion was granted by the court (Moran, J.) on November 9, 1998.
Haniewski was defaulted for failure to appear on December 7, 1998. Reummele was defaulted for failure to plead on February 11, 1999. Eagle and Barbarula have appeared and filed answers. No special defense or counterclaim has been filed.
The action was tried to the court from August 28-31, 2001. Following post-trial briefing, it was argued on November 5, 2001.
VI. QUESTIONS PRESENTED.
As mentioned, a disagreement has arisen among the parties as to the questions that this case presents. The parties' dispute over the questions presented has proven to be even more vexing than their dispute over the answers. The questions presented by Canal in its complaint are clearly before the court. (Whether the court should exercise' its discretion to answer all of those questions is an issue to be addressed in a moment.) It turns out, however, that the questions that Canal wants answered are not the questions that Barbarula wants answered. Why this is so requires a detailed explanation.
The basic dispute between Canal and Barbarula is this. Canal asserts that it effectively cancelled the policy for nonpayment pursuant to Condition 10 of the policy. Barbarula, on the other hand, contends that the MCS-90 endorsement was not effectively cancelled because Haniewski CT Page 15267 was subject to the ICC's jurisdiction and Canal did not supply thirty days notice to the ICC. It is common ground that the ICC received no notice in this case. The question of whether Haniewski was subject to the ICC's jurisdiction in the first place is vigorously disputed.
"Federal law applies to the operation and effect of ICC-mandated endorsements." Harco National Insurance Co. v. Bobac Trucking, Inc.,107 F.3d 733, 735 (9th Cir. 1997). It is common ground that the MCS-90 is an ICC-mandated endorsement and must thus be construed according to federal law. Federal law establishes that, "The purpose of the MCS-90 is to protect the public, not to create a windfall to the insured." Id. at 736. Barbarula, whose decedent was an injured member of the public, is precisely the type of person meant to be protected by the MCS-90. JohnDeere Insurance Co. v. Nueva, 229 F.3d 853, 857 (9th Cir. 2000). The defendants named in the writ — Haniewski, Eagle, and Reummele — are not members of this group. It is vital to understand that the question of the status of the original defendants is entirely distinct from the question of Barbarula's status.
Under our rules of practice, a prayer for relief must "state with precision the declaratory judgment desired." P.B. § 17-56(a)(2). Canal's declaratory requests, set forth in its complaint, are quoted above. These are the only declaratory requests framed by any pleading in the case. Canal's declaratory requests expressly address the status ofthe defendants named in the writ, namely Haniewski, Eagle, and Ruemmele. No pleading in the case makes any request concerning the status of Barbarula, who was added as a defendant at a later date. At argument, Canal reiterated that it seeks only a declaration of the rights of Haniewski, Eagle, and Reummele.
Barbarula has devoted much time and effort in producing evidence relevant to questions concerning his status. He has, however, never filed a pleading framing any declaratory requests. While he might have sought the declaratory judgment he desires by a counterclaim; P.B. § 17-56
(a)(5); he has not done so.
This technical failing is not necessarily fatal. A declaratory judgment action involves the exercise of judicial discretion, and a court hearing such an action may "overlook technical procedural deficiencies insofar as it can safely and properly be done." Adams v. Rubinow, 157 Conn. 150,168, 251 A.2d 49 (1968). Adams, however, was a case of "far reaching public interest" in which the court considered certain questions to comport "with the obvious desires of the parties." Id. Neither of theAdams criteria are satisfied here. The matter now before the court involves a private dispute. In addition, the desires of the parties are sharply divided. While Barbarula wishes the court to consider issues CT Page 15268 concerning his status, Canal does not. Under these circumstances, the prudent judicial course is to address only the declaratory requests framed in accordance with the rules of practice.
The court's consideration of the issues is additionally restricted by Supreme Court precedent. In Hartford Accident Indemnity Co. v.Williamson, 153 Conn. 345, 216 A.2d 635 (1966), the Supreme Court held that the statute now codified as Conn. Gen. Stat. § 38a-321
"furnishes a plain and simple method for the determination of the liability of the plaintiff to respond to a judgment obtained [in the pending action]." 153 Conn. at 349. Given this fact, "the only proper exercise of discretion would be to leave the plaintiff to seek redress in a defense to an action under the statute should the occasion for that arise." Id. at 350.
Williamson is not entirely on point because Barbarula, were he to prevail in the underlying action would pursue his MCS-90 claim pursuant to the procedural terms set forth in the MCS-90 itself rather than in a § 38a-321 action. The MCS-90, quoted above, allows a judgment creditor to "maintain an action in any court of competent jurisdiction against the company to compel such payment." But while an MCS-90 action is distinct from an § 38a-321 action, it is analogous to a §38a-321 action for purposes of Williamson in that it "furnishes a plain and simple method" for the determination of the issues that Barbarula wishes to raise. Moreover, here as in Williamson, the issues raised by the injured party concerning his status vis-a-vis the policy may never actually arise. Those issues will arise only if Barbarula prevails in the underlying action. At this point, those issues remain purely hypothetical.
The quality of the evidence presented also weighs in the balance. As mentioned, Barbarula's claim — or potential claim — that the MCS-90 endorsement derives from his contention that Haniewski was "subject to the ICC's jurisdiction." This question, in turn, depends on whether Haniewski was engaged in interstate commerce.49 U.S.C. § 13501. The evidence submitted on this latter issue has been unsatisfactory in the extreme. For whatever tactical reason, no party submitted the testimony of Haniewski or any of her employees to describe the character of her business. There is no suggestion that these persons are anything other than alive and located within the State of Connecticut. The court is left to infer the nature of Haniewski's business from other evidence. of course, in the ordinary case, the factfinder has no alternative but to find the facts from the evidence actually presented, however unsatisfactory that evidence may be. This case, however, is different. In this case, the court is asked, over the objection of the plaintiff, to exercise its discretion to reach an issue CT Page 15269 not framed by the pleadings and not yet ripe for adjudication. The court will not do so on the basis of unsatisfactory evidence. The court has no confidence that its answer, if given, would be correct.
After considering all of these circumstances — the fact that no declaratory request concerning Barbarula's status is framed in the pleadings, the fact that the plaintiff expressly advises the court that its claim is limited to the pleadings, the fact that Barbarula (if successful in the underlying action) will have a "plain and simple method" of determining the issues he wishes to raise, the fact that the issues raised by Barbarula are purely hypothetical at this point, and the fact that the evidence on this hypothetical point is highly unsatisfactory — the court, in the exercise of its discretion, will consider only the declaratory requests framed by the pleadings.
The court must now determine which of the declaratory requests framed by the pleadings it may appropriately address. This, too, is a vexing matter. There is no difficulty in addressing Canal's third and fourth requests, dealing with its duty to defend and its requests for costs and attorney's fees. Its first and second requests are, however, considerably more problematic. Its first request, asking the court to address the status of "claims arising out of' the underlying action and its second request, asking the court to address the status of "benefits from the Policy for claims arising out of said civil action," almost inevitably implicate the status of Barbarula's claims, which the court has just, for reasons set forth above, declined to address.
While, as a technical matter, Barbarula's claims would be made pursuant to the MCS-90, it is not so easy in practice to divorce such claims from claims that might arise under the policy. The MCS-90 endorsement, as mentioned, refers to "[t]he insurance policy to which this endorsement is attached." The policy and the endorsement are, to some extent, intertwined. There can be no doubt that, if the court were to address Canal's first and second declaratory requests, the parties would attempt to use its answers in future litigation involving Barbarula's status. At the same time, Canal has, as mentioned, expressly asked the court not to address Barbarula's status. An attempt by the court to venture into this area and address the "claim" status of the original defendants without addressing the status of Barbarula has the distinct potential of creating a disastrous muddle. "[A] court should not render a declaratory judgment unless it will fully and finally resolve the uncertainty and controversy as to all parties with a substantial interest in the matter that could be affected by the judgment." Constitution Associates v. New HampshireInsurance Co., 930 P.2d 556, 561 (Colo. 1997).
For these reasons, the court will address only Canal's third and fourth CT Page 15270 declaratory requests.
VII. DUTY TO DEFEND.
A declaratory judgment concerning the duty to defend is unproblematic. The issue is squarely presented by Canal's third declaratory request and is ripe for adjudication since, without a declaratory judgment to the contrary, Canal unquestionably will be required to expend its resources for the defense of the insured parties.
The substantive question of Canal's duty to defend the insured parties is easily answered. Canal has no such duty. Any duty it has arises under the policy, and the policy (for duty to defend purposes) was fully and effectively cancelled prior to the accident in question. Condition 10, of the policy, governing cancellation of the policy, has been fully complied with.
As mentioned, there is an active, and as yet unresolved, dispute as to whether the MCS-90 endorsement has been cancelled. That dispute, however important to Barbarula, has no applicability to Canal's duty to defend the insured parties. (This is the one point on which Canal and Barbarula agree.) As mentioned, the court's construction of the MCS-90 is governed by federal law. Under federal law, "the MCS-90 does not implicitly create a duty to defend." John Deere Insurance Co. v. Nueva, supra,229 F.3d at 857.
Canal thus has no duty to defend the insured parties in the underlying action.
VII. COSTS AND ATTORNEYS FEES.
Canal's fourth declaratory request asks for "reimbursement of costs and attorney's fees spent in connection with this matter." Because it has prevailed on the duty to defend issue, Canal is entitled to file a bill of costs in the normal course. Any objections to that bill of costs can be addressed by the court in the usual manner.
It will be helpful to mention an important limitation at the outset. Since Canal has prevailed only against Haniewski, Eagle, and Reummele, it is only entitled to an assessment of costs against those parties. Canal has not prevailed against Barbarula and is not entitled to recover costs from Barbarula.
Canal points to no contractual or statutory provision entitling it to attorney's fees expended in this action. The sole authority it relies on, Canal Insurance Co. v. First General Insurance Co., 889 F.2d 604
CT Page 15271 (5th Cir. 1989), stands for the proposition that Canal might, under some circumstances be entitled to recover the expense of defending its insured in the underlying action. Id. at 612. Canal's fourth declaratory request, however, makes no claim concerning its expenses in the underlying action. The fourth declaratory request unambiguously asks for "attorney's fees spent in connection with this matter." (Emphasis added.) Canal has shown no legal entitlement to such attorney's fees.
VIII. CONCLUSION.
For the reasons stated above, the court declares as follows:
The plaintiff has no obligation to provide Haniewski, Eagle, and Reummele with a legal defense in the underlying action.
The plaintiff is entitled to costs subject to the conditions set forth in part VII of this opinion. The plaintiff is not entitled to attorney's fees.
Jon C. Blue Judge of the Superior Court