RULES COMMITTEE OF THE SUPERIOR COURT OF
CONNECTICUT ET AL. *v.* FREEDOM OF
INFORMATION COMMISSION ET AL.
(11081)
(11082)

SPEZIALE, C. J., PETERS, SPONZO, DALY and PICKETT, Js.

Argued November 9, 1983—decision released February 14, 1984

*Jacob D. Zeldes,* for the appellant (defendant Raphael L. Podolsky).

*Mitchell W. Pearlman,* for the Freedom of Information Commission, filed a brief and argued as amicus curiae.

*Robert T. Statchen,* assistant attorney general, with whom were *Daniel R. Schaefer,* assistant attorney general, and, on the brief, *Joseph I. Lieberman,* attorney general, *Peter W. Gillies,* deputy attorney general, and *Barney Lapp,* assistant attorney general, for the appellee (plaintiff).

PETERS, J. The determinative issue in this appeal is whether the Rules Committee of the Superior Court falls within the statutory purview of the Connecticut Freedom of Information Act, which defines a "public agency" subject to the act to include "any judicial office, official or body but only in respect to its or their administrative functions." General Statutes § 1-18a (a).[1]

This case was initiated by the defendant, Raphael Podolsky, when, by letter dated November 25, 1977, he requested notice of and access to all meetings of the plaintiff Rules Committee of the Superior Court. Upon the Rules Committee's denial of his request, Podolsky filed a complaint with the Connecticut Freedom of

---

[1] General Statutes § 1-18a (a) provides: " 'Public agency' or 'agency' means any executive, administrative or legislative office of the state or any political subdivision of the state and any state or town agency, any department, institution, bureau, board, commission or official of the state or of any city, town, borough, municipal corporation, school district, regional district or other district or other political subdivision of the state, and also includes any judicial office, official or body but only in respect to its or their administrative functions."

Information Commission (FOIC) on December 12, 1977. On March 8, 1978, after a hearing at which all the parties participated, the FOIC ordered the Rules Committee to provide Podolsky with access to its meetings pursuant to General Statutes § 1-21[2] and with advance notice of its meetings pursuant to General Statutes § 1-21c.[3] On March 17, 1978, the Rules Committee appealed the FOIC order to the Superior Court, pursuant to General Statutes § 4-183, and on August 7, 1981, the Superior Court sustained its appeal. This

---

[2] General Statutes § 1-21 provides in part: "MEETINGS OF GOVERNMENT AGENCIES TO BE PUBLIC. RECORDING OF VOTES. SCHEDULE AND AGENDA OF MEETINGS TO BE FILED. NOTICE OF SPECIAL MEETINGS. EXECUTIVE SESSIONS. The meetings of all public agencies, except executive sessions as defined in subsection (e) of section 1-18a, shall be open to the public. The votes of each member of any such public agency upon any issue before such public agency shall be reduced to writing and made available for public inspection within forty-eight hours, excluding any Saturday, Sunday or legal holiday, and shall also be recorded in the minutes of the session at which taken, which minutes shall be available for public inspection within seven days of the session to which they refer. Each such public agency of the state shall file not later than January thirty-first of each year in the office of the secretary of the state the schedule of the regular meetings of such public agency for the ensuing year . . . . The agenda of the regular meetings of every public agency, except for the general assembly, shall be available to the public and shall be filed, not less than twenty-four hours before the meetings to which they refer, in such agency's regular office or place of business or, if there is no such office or place of business, in the office of the secretary of the state for any such public agency of the state . . . . No member of the public shall be required, as a condition to attendance at a meeting of any such body, to register his name, or furnish other information, or complete a questionnaire or otherwise fulfill any condition precedent to his attendance, except as provided in section 2-45. A public agency may hold an executive session as defined in subsection (e) of section 1-18a, upon an affirmative vote of two-thirds of the members of such body present and voting, taken at a public meeting and stating the reasons for such executive session, as defined in said section."

[3] "[General Statutes] Sec. 1-21c. MAILING OF NOTICE OF MEETINGS TO PERSONS FILING WRITTEN REQUEST. FEES. The public agency shall, where practicable, give notice by mail of each regular meeting, and of any special meeting which is called, at least one week prior to the date set for the meeting, to any person who has filed a written request for such notice with such body, except that such body may give such notice as it deems practical of special meetings called less than seven days prior to the date set for the

court then granted Podolsky's petition for certification. He now appeals from the judgment of the Superior Court sustaining the Rules Committee's appeal.[4]

The trial court's memorandum of decision and the record of the proceedings before the FOIC reveal the following facts. The Rules Committee is a body composed of judges of the Superior Court. Its function is to consider proposed changes in the rules of practice for the Superior Court, and to recommend amendments to the Practice Book, which may be adopted by vote of the Superior Court judges. Once proposed Practice Book amendments have been approved by the Rules Committee, they are published in the Connecticut Law Journal, and are subject to public comment before their adoption by the judges. The Rules Committee does not, however, permit members of the public to attend the deliberative sessions at which the committee debates suggested rule changes and formulates specific amendment proposals.

meeting. Such notice requirement shall not apply to the general assembly, either house thereof or to any committee thereof. Any request for notice filed pursuant to this section shall be valid for one year from the date on which it is filed unless a renewal request is filed. Renewal requests for notice shall be filed within thirty days after January first of each year. Such public agency may establish a reasonable charge for sending such notice based on the estimated cost of providing such service."

[4] The defendant Nadine Monroe initiated a similar request for access to the proceedings of the Rules Committee by letter dated December 19, 1977. She also requested access to the Rules Committee's records. Monroe's complaint was consolidated with Podolsky's for hearing before the FOIC on January 26, 1978. By order dated March 22, 1978, the FOIC required the Rules Committee to provide Monroe with notice of its meetings pursuant to General Statutes § 1-21c, and with access to both its meetings and its records pursuant to §§ 1-19 (a) and 1-21. The two cases were consolidated for purposes of the Rules Committee's appeal to the Superior Court. The defendant Monroe did not petition this court for certification, and she is not a party to this appeal.

The FOIC initially filed an appeal seeking to overturn the Superior Court's judgment with respect to both individual complainants. This court, however, dismissed the FOIC's appeal because it is not an aggrieved party within the meaning of General Statutes § 4-184 and, accordingly, has no stand-

Podolsky sought access to the meetings of the Rules Committee on the basis of his claim that the Rules Committee, although a judicial body, exercises only administrative functions, and therefore is a "public agency" within General Statutes § 1-18a (a)[5] and is governed by the open meeting rules of the Freedom of Information Act. General Statutes § 1-21. The Rules Committee urged, in opposition, that: (1) the Freedom of Information Act, as a matter of statutory construction, does not apply to its activities; and (2) if the Freedom of Information Act were to be held applicable, the act would unconstitutionally intrude upon the inherent rule-making powers of the judiciary, in violation of the constitutional doctrine of separation of powers. Conn. Const., arts. II, V.

The FOIC ordered the Rules Committee to admit Podolsky to its meetings. It concluded that the Rules Committee performed an administrative function within the Judicial Department. The FOIC disclaimed any jurisdiction to consider the constitutionality of the Freedom of Information Act as applied to the Rules Committee.

The trial court sustained the appeal of the Rules Committee. Because the Rules Committee does not adjudicate individual disputes, the trial court accepted the FOIC's ruling that the Rules Committee performed an administrative function for the purposes of § 1-18a (a). Having thus found the Freedom of Information Act applicable, the court then held that the legislature had unconstitutionally intruded upon the judicial power of the constitutional courts and had thereby violated the strict separation of powers guaranteed by the Connecticut constitution.

---

ing to appeal. See *Local 1303 & Local 1378* v. *FOIC*, 191 Conn. 173, 175, 463 A.2d 613 (1983). The FOIC has participated in Podolsky's appeal as amicus curiae.

[5] The text of General Statutes § 1-18a (a) is set out at footnote 1, supra.

On this appeal, Podolsky claims that the trial court erred in holding the Freedom of Information Act to be unconstitutional when applied to the Rules Committee. The Rules Committee, while defending the trial court's ruling, also maintains, as an alternate ground in support of the trial court's judgment; Practice Book § 3012; that the Freedom of Information Act should be construed to exclude its activities. Because we agree with the Rules Committee's statutory argument, we find no error without reaching the constitutional issue.

The central issue before us is the proper construction of "administrative function" for the purpose of § 1-18a (a), since it is undisputed that the Freedom of Information Act itself applies, with respect to the Judicial Department, only to officials or bodies who perform administrative functions. The act itself offers no guidance as to what is "administrative." The term "administrative" has no generally accepted plain meaning, but is commonly used to refer to a wide range of activities extending from the day to day management of an organization or an estate's internal housekeeping functions to the conduct of the entire official business of the government. See, e.g., Black's Law Dictionary (5th Ed. 1979); Webster, Third New International Dictionary (1961). Nor is there a sharp line of demarcation, as the trial court opined, between activities which are adjudicatory and those which are administrative. In zoning matters, for example, it is well understood that quasi-judicial functions are denominated administrative, while the enactment of regulations is considered a legislative function. See *Conto* v. *Zoning Commission,* 186 Conn. 106, 111, 439 A.2d 441 (1982); *Parks* v. *Planning & Zoning Commission,* 178 Conn. 657, 660, 425 A.2d 100 (1979). We must therefore look beyond the face of the statute to ascertain the proper meaning of "administrative functions."

In endeavoring to interpret the language of § 1-18a (a), we must take account of our duty, when presented with a constitutional challenge to a validly enacted statute, to construe the statute, if possible, to comport with the constitution's requirements. *Beccia* v. *Waterbury,* 192 Conn. 127, 133, 470 A.2d 1202 (1984); *Patry* v. *Board of Trustees,* 190 Conn. 460, 470, 461 A.2d 443 (1983); *Moscone* v. *Manson,* 185 Conn. 124, 128, 440 A.2d 848 (1981); *Wagner* v. *Connecticut Personnel Appeal Board,* 170 Conn. 668, 674, 368 A.2d 20 (1976); *Whitfield* v. *Empire Mutual Ins. Co.,* 167 Conn. 499, 507–508, 356 A.2d 139 (1975). This general principle of construction is of particular importance in the context of the present litigation, which involves extraordinarily sensitive issues surrounding the delicate balance among the coordinate branches of our state government. We therefore turn to the legislative history, to scholarly analyses and to our own precedents to determine whether the legislature intended to apply the Freedom of Information Act to the Rules Committee.

The legislative history of the Freedom of Information Act contains almost no discussion of the act's application to the judiciary, and hence provides little guidance for construction of the "administrative functions" of the Judicial Department. The legislative history does, nevertheless, reveal a legislative concern for the independence of the judiciary and a legislative intent to avoid a collision with the prerogatives of the constitutional courts.

When first enacted in 1975, the reach of the Freedom of Information Act within the Judicial Department was limited to the inferior courts established by the legislature; it did not apply to the constitutional courts at all.[6] In describing the proposed act on the floor of the

---

[6] General Statutes § 1-18a (a) as enacted in 1975 provided: "(a) 'Public agency' or 'agency' means any executive, administrative or legislative office

General Assembly, Representative Burke explained: "The Freedom of Information Act covers all branches of government. Executive, Administrative, Legislative and Judicial insofar as the Judicial-Administrative functions, except the Supreme Court of Connecticut and the Superior Courts. The reason these courts were not included is that there is a grave constitutional problem in legislative rule-making for constitutional courts." 18 H. R. Proc., Pt. 8, 1975 Sess., p. 3911. Even with respect to the nonconstitutional Probate and Common Pleas Courts, coverage was limited to their "administrative functions," although the scope of the courts' administrative functions was nowhere detailed.[7]

In 1977, at least partly in response to the merger of the Superior Court with the Court of Common Pleas,[8] the legislature amended the Freedom of Information Act to include the constitutional courts with the § 1-18a (a) definition of covered agencies.[9] The 1977 amendment, however, like the original act, limited its applicability to the undefined "administrative functions" of the Judicial Department. Both houses of the General Assembly passed the amendment by consent, without debate or discussion. 20 S. Proc., Pt. 7, 1977 Sess., pp. 2794, 2843–44; 20 H. R. Proc. Pt. 7, 1977

---

of the state or any political subdivision of the state and any state or town agency, any department, institution, bureau, board, commission or official of the state or of any city, town, borough, municipal corporation, school district, regional district or other district or other political subdivision of the state, and also includes any judicial office, official or body of the court of common pleas, probate court and juvenile court but only in respect to its or their administrative functions."

[7] See 18 S. Proc., Pt. 5, 1975 Sess., p. 2328 (no intent to encompass discussion among Common Pleas judges concerning performance of judicial functions; only administration is covered).

[8] General Statutes § 51-164s (Public Acts 1976, No. 76–436) effected the merger of the Court of Common Pleas with the Superior Court effective July 1, 1978.

[9] See Judiciary Committee Proc., Pt. 2, 1977 Sess., pp. 548, 594.

Sess., p. 2806. There is no indication in the recorded history that the legislature perceived this amendment as having any particular constitutional significance, and certainly no evidence that it was intended to stimulate a confrontation with the Judicial Department by extending the act's open meeting provision to a significant portion of the judiciary's business.[10] The legislative history, then, supports a restrictive reading of the term "administrative."

An interpretation of "administrative functions" that excludes the judicial rule-making power is consistent with the analytic distinctions developed by scholarly commentators. In determining the proper scope of judicial rule-making, three classes of concerns may be identified: concerns that go to substantive rules, concerns that go to procedural rules, and concerns that go to administrative rules. It is the distinction between procedural and administrative rules that is at issue in this case. That distinction turns upon whether we are dealing with matters involved in the adjudication of cases, which are procedural, or with matters involved in the internal organization of large and complex systems of courts, which are administrative. Levin & Amsterdam, "Legislative Control over Judicial Rule-Making: A Problem in Constitutional Revision," 107 U. Pa. L. Rev. 1, 33–34 (1958); see also Kay, "The Rule-Making Authority and Separation of Powers in Connecticut," 8 Conn. L. Rev. 1, 31 n.147 (1975). Following this analytic model, we believe it is appropriate to confine

---

[10] The limited scope of the act's intended application to the judiciary is evidenced by the remarks of the FOIC's representative, who testified before the Judiciary Committee in support of the 1977 amendment that, in the one case presented to the FOIC in its first two years of operation involving the Judicial Department, the FOIC had ordered the release of jury dockets listing the names of litigants and counsel, the judge to whom each case was assigned and the time and place each case was to be called. The FOIC representative further testified, "I think that's a good example of what an administer of [sic administrative] records [sic] of the court is." Judiciary Committee Proc., Pt. 2, 1977 Sess., p. 548.

"administrative functions" in § 1-18a (a) to matters relating to the management of the internal institutional machinery of the court system.

We have recognized a role for "administrative functions" that relates to the internal management of the court system in our opinion in *Adams* v. *Rubinow,* 157 Conn. 150, 251 A.2d 49 (1968). There we upheld the constitutionality of a statute providing for the appointment of a judge of the Superior Court to act as administrator of the unified Probate Court system. In rejecting the plaintiff probate judges' claim that the act encroached on their inherent judicial authority to manage the affairs of their courts, we emphasized the limited responsibilities of the administrator, which "concerned [only the] . . . efficient administrative, accounting and record-keeping procedures to be followed in the Probate Court . . . ." *Adams* v. *Rubinow,* supra, 160. We also upheld the constitutionality of General Statutes § 45-4f,[11] authorizing the Probate Court administrator to propose rules of probate practice and to compile a Probate Practice Book, by narrowly construing the administrator's rule-making

---

[11] "[General Statutes] Sec. 45-4f. RULES FOR PROBATE PRACTICE AND PROCEDURE. PRACTICE BOOK. (a) The probate court administrator shall, from time to time, recommend to the judges of the supreme court, for adoption and promulgation pursuant to the provisions of section 51-14, uniform rules for practice and procedure in the courts of probate. Any rules for practice and procedure so adopted and promulgated shall be mandatory upon all courts of probate. To assist him in formulating such recommendations, the probate court administrator shall meet with the probate assembly at least annually, and may meet with members of the bar of this state and with the general public.

"(b) The probate court administrator shall, from time to time, compile into a probate practice book all rules regarding practice and procedure in the courts of probate, and all forms prescribed for use in probate courts. He shall cause the probate practice book to be published, shall pay for the probate practice book from the trust fund provided for by section 45-4h and shall sell the probate practice book, at a price determined by him. The proceeds from the sales shall be added to and shall become a part of such trust fund."

authority as "limited to rules as to efficient administrative procedures including accounting and record keeping." *Adams* v. *Rubinow,* supra, 172.

Like the Probate Court administration statutes upheld in *Adams* v. *Rubinow,* General Statutes §§ 51-5a[12] and 51-9,[13] the statutes which describe the

---

[12] "[General Statutes] Sec. 51-5a. DUTIES AND POWERS OF CHIEF COURT ADMINISTRATOR. The chief court administrator: (1) Shall be the administrative director of the judicial department and shall be responsible for the efficient operation of the department, the prompt disposition of cases and the prompt and proper administration of judicial business; (2) shall meet periodically at such places and times as he may designate with any judge, judges, or committee of judges, and with the probate court administrator to transact such business as is necessary to insure the efficient administration of the judicial department; (3) may issue such orders, require such reports and appoint other judges to such positions to perform such duties, as he deems necessary to carry out his responsibilities; (4) may assign, reassign and modify assignments of the judges of the superior court to any division or part of the superior court and may order the transfer of actions under sections 51-347a and 51-347b; and (5) may provide for the convening of conferences of the judges of the several courts, or any of them, and of such members of the bar as he may determine, for the consideration of matters relating to judicial business, the improvement of the judicial system and the effective administration of justice in this state."

[13] "[General Statutes] Sec. 51-9. DUTIES OF EXECUTIVE SECRETARY AND OTHER STAFF MEMBERS. Under the supervision and direction of the chief court administrator, the executive secretary and other members of the staff of the office of chief court administrator shall:

"(1) Audit all bills to be paid from state appropriations, except bills of the division of criminal justice, for the expenses of the judicial department and its constituent courts prior to taxation or final approval thereof by any judge;

"(2) Maintain adequate accounting and budgetary records for all appropriations by the state for the maintenance of the judicial department, except the division of criminal justice, and all other appropriations assigned by the legislature or state budgetary control offices for administration by the judicial department, except the division of criminal justice;

"(3) Prepare and submit to the appropriate budget agency of the state government estimates of appropriations necessary for the maintenance and operation of the judicial department, including therein estimates submitted for the division of criminal justice as provided in section 51-279, and make recommendations in respect to those appropriations;

duties of the chief court administrator and the executive secretary, respectively, provide further examples

"(4) Act as secretary of any meetings, conferences or assemblies of judges, or committees thereof, of the judicial department and of its constituent courts;

"(5) Supervise all purchases of commodities and services for the judicial department, except for the division of criminal justice, to be charged to state appropriations, and issue all orders therefor for the department, excluding orders for the division of criminal justice;

"(6) Examine the administrative methods and systems employed in the judicial department and its constituent courts and agencies, except the division of criminal justice, and develop and implement programs for the improvement thereof and for securing uniform administration and procedures;

"(7) Examine the state of the dockets of the courts of the judicial department to ascertain the need for assistance by any court and to implement programs for the fair and prompt disposition of cases therein;

"(8) Collect and compile statistical and other data concerning the business transacted by the judicial department and its constituent courts and the expenditure of public moneys for the maintenance and operation of the judicial system;

"(9) Assist in the preparation of the assignments of the judges of the superior court and attend to the printing and distribution for the superior court of an annual booklet containing relevant information pertaining to the operation of the court, including any assignments made prior to publication;

"(10) Serve as payroll officer for the judicial department, excluding the division of criminal justice, and for the supreme court and superior court;

"(11) Supervise the assignment of court reporters of the superior court;

"(12) Conduct research and planning activities for the judicial department and its constituent courts and offices as deemed feasible by, or in the discretion of, the chief justice or the chief court administrator;

"(13) Develop education programs for the judges and other personnel of the judicial department;

"(14) Develop personnel standards, policies and procedures, and make recommendations concerning all personnel matters, including requests for salary increases or for additional positions, for consideration by the supreme court or the appropriate appointing authorities;

"(15) Report periodically to the chief court administrator concerning all matters which have been entrusted to him;

"(16) Attend to matters assigned to him by the chief justice, or the chief court administrator or by statute;

"(17) Design, implement and maintain, as deemed feasible by the chief court administrator, computerized automatic data processing systems for use in the supreme court and superior court or divisions of the superior court; and

of administrative tasks.[14] Those statutes speak mainly to the accounting, personnel, scheduling and record-keeping activities of the Judicial Department. They do not purport to extend delegation of legislative authority to the rules of practice.

The Rules Committee of the Superior Court plays no role in the management of the internal institutional machinery of the court system. It is charged, instead, with the responsibility of formulating rules of practice and procedure that directly control the conduct of litigation. It sets the parameters of the adjudicative process that regulates the interactions between individual litigants and the courts. Accordingly, we hold that the Rules Committee does not perform "administrative functions" within the meaning of § 1-18a (a) and is not subject to the provisions of the Freedom of Information Act.[15]

There is no error.

In this opinion the other judges concurred.

---

"(18) Supervise administrative methods employed in clerks' offices and in the various offices of the supreme court and superior court."

[14] We recognize that some of the functions delineated in the above statutes are administrative matters relating to the internal institutional aspects of the court system. The legislative authority to delineate the functions set out in the above statutes is not now in question and therefore we need not determine which of the functions are administrative and which are inherently judicial.

[15] Although courts in other jurisdictions have considered the enforceability of legislation requiring judicial rule-making sessions to be open to the public, those cases are distinguishable from the case before us. They involved courts whose rule-making authority had different constitutional bases than does ours, and statutes that expressly provided that judicial rule-making be public. Nonetheless, we note that the statutory provisions were, in those cases, held to violate the separation of powers. *In re 1976 P.A. 267*, 400 Mich. 660, 663, 255 N.W.2d 635 (1977); *Goldberg* v. *District Court*, 93 Nev. 614, 617–18, 572 P.2d 521 (1977); *In re 42 P.A.C.S. § 1703*, 482 Pa. 522, 528, 394 A.2d 444 (1978).