CONNECTICUT BAR EXAMINING COMMITTEE ET AL. *v.* FREEDOM OF INFORMATION COMMISSION ET AL. (13457)

PETERS, C. J., SHEA, CALLAHAN, GLASS and HULL, Js.

Argued October 11—decision released November 22, 1988

*Constance L. Chambers,* assistant general counsel, with whom, on the brief, was *Mitchell W. Pearlman,* general counsel, for the appellant (named defendant).

*William J. Corvo,* pro se, the defendant.

*John D. LaBelle, Sr.,* for the appellees (plaintiffs).

SHEA, J. The plaintiffs appealed to the Superior Court after the defendant Freedom of Information Commission (FOIC) had ordered the plaintiff bar examining committee and its administrative director, the plaintiff R. David Stamm, to disclose certain information concerning the July, 1983 bar examination to the defendant William J. Corvo, who had failed that examination. The court sustained the appeal, concluding that the bar examining committee does not perform "administrative functions" within the meaning of General Statutes § 1-18a (a),[1] which includes within the definition

---

[1] "[General Statutes] Sec. 1-18a. DEFINITIONS. As used in this chapter, the following words and phrases shall have the following meanings, except where such terms are used in a context which clearly indicates the contrary:

"(a) 'Public agency' or 'agency' means any executive, administrative or legislative office of the state or any political subdivision of the state and any state or town agency, any department, institution, bureau, board, commission, authority or official of the state or of any city, town, borough, municipal corporation, school district, regional district or other district or other political subdivision of the state, including any committee of any such office, subdivision, agency, department, institution, bureau, board, commission, authority or official, and also includes any judicial office, official or body or committee thereof but only in respect to its or their administrative functions."

of a "public agency," the records of which are open to inspection pursuant to General Statutes § 1-19,[2] "any judicial office, official or body or committee thereof but only in respect to its or their administrative functions." The named defendant has appealed from that judgment, claiming that the bar examining committee is a judicial body that does perform "administrative functions" and that its records, therefore, are subject to disclosure. We conclude that in selecting candidates for admission to the bar the committee is acting as an arm of the judiciary, but that in such a role some of its functions are administrative and that its records that relate solely to those functions must be made available to the public pursuant to § 1-19. Accordingly, we remand the case for further proceedings in the trial court to determine (1) which portions of the information the FOIC has ordered to be disclosed concern only the performance of the committee's administrative functions, and (2) whether public access to the pertinent records may interfere with the performance of the committee's judicial functions.

---

[2] "[General Statutes] Sec. 1-19. ACCESS TO PUBLIC RECORDS. EXEMPT RECORDS. (a) Except as otherwise provided by any federal law or state statute, all records maintained or kept on file by any public agency, whether or not such records are required by any law or by any rule or regulation, shall be public records and every person shall have the right to inspect such records promptly during regular office or business hours or to receive a copy of such records in accordance with the provisions of section 1-15. Any agency rule or regulation or part thereof, that conflicts with the provisions of this subsection or diminishes or curtails in any way the rights granted by this subsection shall be void. Each such agency shall keep and maintain all public records in its custody at its regular office or place of business in an accessible place and, if there is no such office or place of business, the public records pertaining to such agency shall be kept in the office of the clerk of the political subdivision in which such public agency is located or of the secretary of the state, as the case may be. Any certified record hereunder attested as a true copy by the clerk, chief or deputy of such agency or by such other person designated or empowered by law to so act, shall be competent evidence in any court of this state of the facts contained therein. Each such agency shall make, keep and maintain a record of the proceedings of its meetings."

Upon a complaint filed by the defendant Corvo, the FOIC on October 10, 1984, ordered the bar examining committee to provide him[3] with copies of records containing the following information pertaining to the bar examination given on July 27 and July 28, 1983: a list of the persons who read, scored or graded the essay answers; a list of all independent readers used by the committee for such examination; a list of readers, graders or scorers for each of the twelve essay questions; the criteria used to determine the competency of the committee's examiners, readers and scorers; the review procedure used to determine the competency of examiners; the standard deviation of both Part A and Part B scores; the average of Part A and Part B scores; guidelines as to conditions under which the bar examination answers may be graded; names of individuals who select examiners for the bar examination; names of the monitors of the examination; the criteria for determining that the number 264 qualifies an individual to practice law in the state of Connecticut; the purpose and meaning of that number as established in any rules or guidelines which the bar examining committee may have promulgated; and the criteria for using the numbers 254 and 274 as numbers which automatically require a rereading of essay answers by an independent reader.

This court has previously discerned in the legislative history of the 1977 amendment[4] to § 1-18a (a), that

---

[3] Although the FOIC order directs the bar examining committee to make the records involved available only to the defendant William T. Corvo, the order is predicated upon his status as a "person denied the right to inspect or copy records under section 1-19"; General Statutes § 1-21i (b); and not his status as an unsuccessful applicant for admission to the bar. Thus it is of no concern in the decision of this case that, as claimed by counsel for the bar examining committee, this defendant might have had the alternative remedy of an appeal from the refusal of the committee to recommend him for admission to the bar.

[4] Public Acts 1977, No. 77-421.

made the Freedom of Information Act (FOIA) applicable to the constitutional courts, "a legislative concern for the independence of the judiciary and a legislative intent to avoid a collision with the prerogatives of the constitutional courts." *Rules Committee of the Superior Court* v. *Freedom of Information Commission,* 192 Conn. 234, 240, 472 A.2d 9 (1984). We have construed the term "administrative functions" in § 1-18a (a), records of which are accessible under § 1-19, to exclude matters involved in the adjudication of cases or the adoption of rules of court procedure and to refer only to "matters relating to the internal management of the internal institutional machinery of the court system." Id., 243. We have recognized that certain duties performed by judicial officers, such as accounting, personnel scheduling and record keeping, some of which are detailed in General Statutes § 51-5a, are administrative tasks. Id., 244–46. It follows that any records relating to the performance of such duties must be made available pursuant to § 1-19, unless doing so would in some manner interfere with the performance of judicial functions.

"Fixing the qualifications for, as well as admitting persons to, the practice of law in this state has ever been an exercise of judicial power." *Heiberger* v. *Clark,* 148 Conn. 177, 185, 169 A.2d 652 (1961). "Long before the adoption of the Constitution of the State . . . it was the settled practice of the courts to admit no attorneys except on the recommendation of the county bar . . . ." *O'Brien's Petition,* 79 Conn. 46, 54, 63 A. 777 (1906). "The bar examining committee is an arm of the court to which is entrusted the administration of specific details . . . . The committee can act, however, only under the supervision of the court. It is the court, and not the committee, which takes the final and decisive action." *Heiberger* v. *Clark,* supra, 182–83. The judges of the Superior Court have adopted rules defin-

ing the role of the bar examining committee in the process of determining the qualifications of candidates for admission to the bar. Practice Book §§ 9 through 17. The close relationship between the committee in screening applicants and the court in admitting them to the practice of law plainly makes the definition of a "public agency" in § 1-18a (a) applicable to the committee as a "body or committee" of the judiciary, but "only in respect to its . . . administrative functions."

The FOIC claims that all the functions of the bar examining committee are administrative in that they relate to "the management of the internal institutional machinery of the court system." *Rules Committee of the Superior Court* v. *Freedom of Information Commission,* supra, 243. The plaintiffs claim that the "committee is involved only with matters that deal with the individual applicants and this is adjudicatory and procedural as distinguished from matters involving the management of the internal organization of the Judicial Department, which are administrative." Because of the poles-apart positions of the litigants, there was no attempt in the trial court to scrutinize the several categories of records that the FOIC had ordered to be disclosed in order to determine their relationship to the various duties of the committee and the effect a public disclosure might have upon the efficient performance of those duties.

We agree with the committee that its principal function of determining whether an applicant is qualified for admission to the bar is quite analogous to adjudication. This function involves the exercise of considered judgment in establishing the criteria to be used for that determination, in selecting the questions for the examination and deciding upon its scope, in grading the examinations, and in establishing procedures designed to reduce the effect of subjectivity on the part of the examiners. It is not at all clear, however, that

all of the records generated in this adjudicative process are wholly unrelated to the internal management of the court system or that all of them must be withheld from public view to avoid interference with that process. For example, the duty of the committee set forth in Practice Book § 17 to certify to the clerks of the Superior Court in each county the names of the successful applicants to the bar can hardly be classified as adjudicative.

There is an obvious distinction between the functions of the committee in determining whether applicants have satisfied the requirements for admission to the practice of law and in announcing the results of its deliberations. The role of the committee in establishing the criteria for determining the qualifications of applicants is similar to that of the rules committee of the Superior Court in formulating rules of procedure for adoption by the judges, a role that we have held is a judicial function within the meaning of § 1-18a (a). *Rules Committee of the Superior Court* v. *Freedom of Information Commission,* supra, 246. Nevertheless, the promulgation of those criteria, like the publication of the rules of practice, plainly is an administrative matter. The application of the standards for admission to a particular candidate, however, like the application of the law to the facts of a case, is a function of the committee that must be regarded as essentially judicial. Some aspects of this adjudicative process, however, such as the compilation of scores on the examinations in a manner similar to the preservation of records of judicial proceedings in the clerk's office, may properly be classified as administrative.

We have construed the limitation to "administrative functions" of the public disclosure provisions of the FOIA as applied to the judicial department to be designed to accommodate, rather than infringe upon, the independence of a constitutional court in perform-

ing its historic functions. Id., 241–42. We have concluded that the bar examining committee, as an "arm of the court," is performing an essentially judicial function in deciding upon the qualifications of candidates for admission to the bar. See *Heiberger* v. *Clark,* supra, 185. To the extent that public access to any of the records ordered by the FOIC to be disclosed may reasonably be considered by the committee to impede significantly its performance of that function, the committee would be justified in refusing such disclosure. See *Adams* v. *Rubinow,* 157 Conn. 150, 160–61, 251 A.2d 49 (1968).

Because the presentation made in the trial court by the parties did not address the effect of the disclosure ordered upon the committee's ability to perform its duties, the trial court had no occasion to make any findings upon these essentially factual issues. The committee apparently has already furnished some of the information ordered to be disclosed.[5] During oral argument it appeared that the basis for the committee's refusal to disclose many of the requested items was unknown. We conclude that the case must be remanded to the trial court for a further hearing so that findings may be made concerning the impact upon the committee of complying with the FOIC order of disclosure and the reasonableness of its refusal in respect to each item sought.

There is error, the judgment is set aside and the case is remanded to the trial court for further proceedings in accordance with this opinion.

In this opinion the other justices concurred.

[5] We note that in the October 4, 1988 issue of the Connecticut Law Journal the bar examining committee has published regulations adopted pursuant to Practice Book § 12 that may satisfy some of the inquiries to which the FOIC has directed the committee to respond. These regulations, however, will not become effective until ninety days after their publication.