[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Kalman Lebow, brings this action for wrongful discharge, violation of General Statutes § 31-51q, and violation of General Statutes § 31-51m against the defendants, American Chemical and Refining Company, Inc. (ACR) and Handy 
Harman.
The following facts are undisputed: The plaintiff was hired by ACR in October 1983 as an environmental coordinator. His job required him to perform safety inspections of the ACR plant, to assist customers in preparing environmental documents, to train the defendants' employees in the handling of hazardous CT Page 7761 materials, and to prepare material safety data sheets for ACR products. The plaintiff was a good employee. During the course of his employment, the plaintiff pointed out to his supervisors possible environmental violations and made recommendations, some of which the defendants followed. In addition, the plaintiff, who is not an attorney, sought legal guidance on environmental issues from John Bullock, the defendants' environmental counsel. The plaintiff did not report any violations to any official who was not employed by the defendants or to any environmental agency.
At the beginning of 1992, ACR sold its Waterbury operations. The plaintiff was originally scheduled to be terminated on April 17, 1992. In April, 1992, the plaintiff agreed to stay on with ACR and work on writing a decommissioning plan that would direct the clean up operation of the laboratories and the plant. The plaintiff received a raise in exchange for staying to work on the decommissioning plan.
On May 1, 1992, Fred Roberts, formerly the accounting director, was put in charge of the decommissioning and remaining employees. On May 13, 1992, the plaintiff signed a document entitled "severance package." This document provides that employees staying to clean-up for an unknown period of time would receive sixty days notice of their termination date. In addition, this document states that the employee would receive the severance package, including severance pay of one weeks salary for each year of service. Roberts fired the plaintiff on August 24, 1992. The plaintiff received two months salary in lieu of the two months notice. On October 23, 1992, the plaintiff signed a waiver in exchange for receiving the severance package that stated that the plaintiff agrees to
 release, waive and discharge the Company, its successors, and assigns from any and all rights, liabilities, claims, grievances, demands, damages and causes of action known or unknown arising out of or in any manner connected with my employment relationship with the Company, or the termination of such employment relationship, excluding Workers' Compensation rights pursuant to applicable federal/state law.
The decommissioning of ACR ended in May 1993.
The plaintiff argues that he was terminated because, during CT Page 7762 his employment as an environmental coordinator, he repeatedly notified his superiors and Bullock of environmental violations at ACR. He also argues that he was terminated because he came into conflict with Roberts during the decommissioning of the plant when the plaintiff insisted on compliance with environmental regulations and refused to sign what he considered to be misleading reports. The plaintiff also claims that his termination was an effort to suppress his right to free speech in violation of General Statutes § 31-51q. In addition, the plaintiff alleges in his complaint that he was wrongfully discharged in violation of General Statutes § 31-51m because he reported the violations to Bullock, "a Commissioner of the Superior Court, in the belief that Mr. Bullock's obligations as an officer of the Court would require him to take appropriate preventive action . . . . and [the plaintiff] believed that he was making the proper report to the proper person and agency without having to run the risk of economic suicide in the process." The plaintiff requests money damages, reinstatement, restoration of his benefits, attorney's fees and punitive damages.
The defendants argue that the plaintiff was fired because he was not creating the decommissioning plan quickly enough. In addition, the defendants argue that the plaintiff signed an agreement to waive claims against ACR such as the present matter in exchange for severance pay. Furthermore, the defendants argue that the plaintiff has failed to produce evidence, that if believed, make out the elements of claims under General Statutes §§ 31-51q and 31-51m as the plaintiff did not show that he was exercising his right to free speech and did not show that he made a report of environmental violations to any public body.
A trial was held on March 30, March 31, April 5, April 6, and April 7, 1994. On April 5, 1994, the defendants filed a motion for dismissal on the ground that the plaintiff failed to make out a prima facie case at trial. The defendants also filed a memorandum of law. On June 15, 1994, the defendants filed a trial brief; and on June 16, the plaintiff filed a trial brief that included his arguments in opposition to the defendants' motion to dismiss.
A judgment of dismissal may be entered if the evidence produced by the plaintiff at trial, if fully believed, does not support the essential elements of a prima facie case. Falker v.Samperi, 190 Conn. 412, 418-19, 461 A.2d 681 (1983). The CT Page 7763 evidence must be interpreted in the light most favorable to the plaintiff. Id., 419.
In their motion to dismiss, the defendants argue that the plaintiff has failed to make out a claim for wrongful discharge in violation of public policy as set forth in Sheets v. Teddy'sFrosted Foods, Inc., 179 Conn. 471, 474-75, 427 A.2d 385 (1980). In Sheets v. Teddy's Frosted Foods, Inc., an employee was terminated for complaining to his employer about violations of health and safety laws, including the mislabeling of food products. In the present case the plaintiff has alleged and produced evidence that he was terminated because he reported violations of environmental and health and safety laws, including the mislabeling of drums of chemicals, to his superiors. The plaintiff has produced evidence in support of a similar claim to that alleged in Sheets v. Teddy's FrostedFoods, Inc., supra, 473. Therefore, the defendants' motion for dismissal of the claim for wrongful discharge is denied.
An employer may terminate an employee at will with or without cause. Coelho v. Posi-Seal International, Inc.,208 Conn. 106, 117-18, 544 A.2d 170 (1988). However, there is an exception to this rule when the termination contravenes a clear mandate of public policy. Antinerella v. Rioux, 229 Conn. 479,492, ___ A.2d ___ (1994). "[A] common law cause of action in tort for the discharge of an at will employee [exists] `if the former employee can prove a demonstrably improper reason for dismissal, a reason whose impropriety is derived from some important violation of public policy.'" (Emphasis in original.)Carbone v. Atlantic Richfield Co., 204 Conn. 460, 467,528 A.2d 1137 (1987), quoting Sheets v. Teddy's Frozen Foods, Inc., supra, 197 Conn. 475. In order to determine public policy, the court looks "`[to see whether] the plaintiff has . . . alleged that his discharge violated any explicit statutory or constitutional provision . . . [or whether] he alleged that his dismissal contravened any judicially conceived notion of public policy.'" (Citation omitted.) Antinerella v. Rioux, supra,229 Conn. 492.
In Sheets v. Teddy's Frosted Foods, Inc., supra,179 Conn. 479-80, public policy was violated where an employee whose job duties included making sure that the operations proceeded in accordance with health and safety laws was terminated for reporting violations of those laws. Public policy has been violated if the court finds that the plaintiff was terminated in CT Page 7764 retaliation for reporting violations of environmental and health and safety codes to his superiors and Bullock. Therefore, the critical issue is Robert's motivation for terminating the plaintiff rather than whether environmental violations in fact occurred.
The plaintiff presented testimony of instances where he brought possible environmental problems to the attention of his superiors during the course of his employment as an environmental coordinator. The court finds that the instances that occurred before Roberts was supervising the plaintiff during the decommissioning are irrelevant because they were too remote in time. Furthermore, the plaintiff stated that he was never reprimanded or discouraged from apprising his superiors or Bullock of his concerns.
The plaintiff claims that he raised concerns with Roberts regarding a drain, the use of a scrubber, and the treating of materials that did not fall under ACR's permit to reclaim precious materials. It is not disputed that the drain in the laboratory was plugged at the plaintiff's suggestion. In addition, Roberts testified that he consulted with another engineer about using the scrubber in a different chemical process, that he had chemical samples of ceiling tiles and walls tested to see if they contained precious materials that were permitted to be reclaimed in ACR's facility, and that formaldehyde was treated in order to reclaim copper. The court determines from the testimony that it seems that the plaintiff was not privy to all events that occurred during the physical cleaning of the facilities. Roberts further testified that he fired the plaintiff because the plaintiff had told Roberts that his heart was not in finishing the decommissioning plan and because the plaintiff was not progressing with the plan fast enough. It is undisputed that Roberts told the plaintiff that the preferred deadline for finishing the plan was the end of July and that the plaintiff had not completed the plan by that time. Roberts also testified that he presented the plaintiff's plan to date in a meeting with corporate officials at the end of July and that the plan was not accepted as a proper decommissioning plan. The court also notes it appears that the plaintiff resented and resisted working under Roberts, who had no environmental or chemical background. The parties agree that there were other employees, like August Deveeco, who had a chemical and environmental background that were available to help with the decommissioning and to give advice to Roberts. CT Page 7765
The court finds the testimony of Roberts to be credible. Therefore, the court finds that Roberts did not fire the plaintiff because he raised concerns about compliance with environmental laws and regulations and the court enters judgment on the merits of the wrongful discharge claim in favor of the defendants.
General Statutes § 31-51q provides:
 Any employer, including the state and any instrumentality or political subdivision thereof, who subjects any employee to discipline or discharge on account of the exercise of such employee of rights guaranteed by the first amendment to the United States Constitution or section 3, 4, or 14 of article first of the constitution of the state, provided such activity does not substantially or materially interfere with the employee's bona fide job performance or the working relationship between the employee and the employer, shall be liable to such employee for damages caused by such discipline or discharge, including punitive damages, and for reasonable attorney's fees as part of the costs of any such action for damages. If the court determines that such action for damages was brought without substantial justification, the court may award costs and reasonable attorney's fees to the employer.
The defendants argue that a judgment of dismissal should be entered because free speech rights protected by the United States and the Connecticut constitutions do not extend to speech that takes place on private property and the plaintiff does not allege that he exercised his right of free speech anywhere other than at work, which is located on private property. The plaintiff argues that his claim under General Statutes § 31-51q
is similar to that in Skinner v. Angliker, 15 Conn. App. 297,544 A.2d 246 (1988), aff'd, 211 Conn. 370, 559 A.2d 701 (1989).
The first step in analyzing a claim under General Statutes § 31-51q is to determine whether the rights exercised fall under the protection of the first amendment of the United States constitution or sections 3, 4, or 14 of article first of the Connecticut constitution. Vince v. Worrell, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket CT Page 7766 No. 319386 (July 14, 1992, Schaller, J.). The minimum protection of free speech under the first amendment does not extend to speech conducted on private property. Cologne v. WestfarmsAssociates, 192 Conn. 48, 57, 469 A.2d 1201 (1984), citingPruneyard Shopping Center v. Robins, 447 U.S. 74,100 S.Ct. 2035, 64 L.Ed.2d 741 (1980). The state legislature may increase the protection of free speech rights by protecting speech that occurs on private property that has a public nature. See Pruneyard Shopping Center v. Robins, supra; Cologne v.Westfarms Associates, supra. However, §§ 3, 4, and 14 of article first of the Connecticut constitution do not expand the right to free speech on private property. Colonge v. Westfarms Associates, supra, 192 Conn. 66.
A plaintiff who complained about sexual harassment was not exercising free speech rights within the meaning of General Statutes § 31-51q when he made statements at work on private property. Monahan v. Bausch, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 280862 (September 11, 1991, Spear, J.), but see Olsen v. Accessory ControlsEquipment Corp. , 9 CSCR 262, 263 (February 15, 1994, Corradino, J.) (stating that if speech occurred on the employment premises, the employer could likely raise the defense that the speech interfered with the employment relationship). The court inMonahan v. Bausch, supra, held that because neither the United States or Connecticut constitutions protect speech that takes place on private property, "the statute [§ 31-51q] does not in fact give private employees a cause of action when they speak on private property."
The court adopts the holding in Monahan v. Bausch, supra, that General Statutes § 31-51q protects a private employee from termination in retaliation for exercising protected speech, but not for speech that takes place solely on private property. The clear language of General Statutes § 31-51q provides that a private or state employee cannot be terminated for exercising rights "guaranteed" by the United States or Connecticut constitutions. The intent of the legislature may be determined from clear and unambiguous language. Haesche v. Kissner,229 Conn. 213, 223, ___ A.2d ___ (1994). The legislature in General Statutes § 31-51q explicitly extended free speech rights to allow an action against a private employer, but did not enlarge the scope of protected speech to include speech that takes place on private property. CT Page 7767
The plaintiff relies on Skinner v. Angliker, supra. However, Skinner v. Angliker, supra, 211 Conn. 372, is distinguishable as the plaintiff in that case was employed by a state agency and, therefore, the workplace had more of a public function than the premises of a private employer. In the situation involving a public employee, the analysis under Vincev. Worrell of determining whether the speech had a public content is more appropriate than in the present case involving a private employer and private employee, especially where the United States Supreme Court and the Connecticut Supreme Court have determined that speech is not protected on private property. See Pruneyard Shopping Center v. Robins, supra;Colonge v. Westfarms Associates, supra.
The plaintiff has only alleged and produced evidence that he made statements at work on private property. Judgment of dismissal is entered on the plaintiff's claim under count two as he failed to allege or submit evidence showing that he was exercising rights that are protected under the United States constitution or the Connecticut constitution.
Even if the court finds that the plaintiff was exercising free speech rights protected under the Connecticut constitution, the court holds that the defendant has not violated General Statutes § 31-51q based on the previous ruling that the plaintiff was not fired in retaliation for expressing environmental concerns.
General Statutes § 31-51m(b) provides that "[n]o employer shall discharge . . . any employee because the employee . . . reports, verbally or in writing, a violation or suspected violation of any state or federal law or regulation . . . to a public body . . . ." "`Public body' means (A) any public agency, as defined in subsection (a) of section 1-18a, or any employee, member or officer thereof, or (B) any federal agency or any employee, member or officer thereof." General Statutes § 31-51m(a)(4). A public agency under General Statutes § 1-18a(a) "means any executive, administrative or legislative office of the state or any political subdivision of the state . . . and also includes any judicial office, official or body or committee thereof but only in respect to its or their administrative functions." An essential element of a claim under General Statutes § 31-51m is that the plaintiff reported a violation to a public body. Girgenti v. Cali-Con, Inc., 15 Conn. App. 130,140, 544 A.2d 655 (1988). CT Page 7768
The defendants argue that judgment for dismissal should be entered on the claim under General Statutes § 31-51m because the plaintiff has not alleged or submitted evidence to show that he contacted a public body. The plaintiff argues that Bullock is a member of a public body by virtue of being an attorney who is a commissioner of the superior court and argues that the position of commissioner of the superior court is a judicial office within the meaning of General Statutes § 1-18a(a).
"An attorney's designation as a commissioner of the Superior Court in and of itself does not constitute an `office' or `appointed position' as those terms have been defined by our Supreme Court . . . ." State v. Upton, 9 Conn. App. 825, 826,520 A.2d 1289, cert. denied, 204 Conn. 809, 528 A.2d 1155
(1987). A judicial office is a public agency under General Statutes § 1-18a(a) only with regard to its administrative functions. Rules Committee of the Superior Court v. FOIC,192 Conn. 234, 243, 472 A.2d 9 (1984). "We have construed the term `administrative functions' in § 1-18a(a) . . . to exclude matters involved in the adjudication of cases or the adoption of rules of court procedure and to refer only to `matters relating to the internal management of the internal institutional machinery of the court system.'" (Citation omitted.) Connecticut BarExamining Committee v. FOIC, 209 Conn. 204, 208, 550 A.2d 633
(1988). Administrative functions include "the accounting, personnel, scheduling and recordkeeping activities of the Judicial Department." Rules Committee of the Superior Court v.FOIC, supra, 192 Conn. 246. An attorney counselling a client or an employee of a client is not performing an administrative function. The fact that an attorney generally is bound by rules of confidentiality further indicates that this is not a public role. See Rules of Professional Conduct 1.6.
Judgment of dismissal is entered on the plaintiff's claim for violation of General Statutes § 31-51m on the ground that the plaintiff has failed to submit evidence that he made a report to a public body.
/s/ Sylvester, J. SYLVESTER CT Page 7769